ACCEPTED
12-17-00125-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
7/31/2017 3:13 PM
Pam Estes
CLERK

# No. 12-17-00125-CV

—————————

### In the Twelfth Court of Appeals
### Tyler, Texas

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
7/31/2017 3:13:07 PM
PAM ESTES
Clerk

—————————

Roger Tarrant, et al,
*Appellants*

v.

Daniel Scarbrough,
*Appellee.*

—————————

## Appellants' Brief

—————————

Gregory D. Smith
Bar No. 18600600
SMITH LEGAL PLLC
110 N. College Ave., Suite 1120
Tyler, TX 75702
Telephone: (903) 630-7165
Facsimile: (903) 609-3077
greg@smithlegaltx.com

Jim Echols
Bar No. 06391500
SAUNDERS, SCHMIDT
   & ECHOLS, P. C.
202 W. Erwin Street, Suite 200
Tyler, TX 75702
Telephone: (903) 595-3791
Facsimile: (903) 595-3796
j.m.echols@att.net

Attorneys for Appellants

## Identity of Parties

*Appellants:*           Roger Tarrant
                        Denise Tarrant
                        Justin Tarrant
                        D. A. Tarrant Irrevocable Trust

*Counsel for Appellants:*   Gregory D. Smith
                        Bar No. 18600600
                        SMITH LEGAL PLLC
                        110 N. College Ave., Suite 1120
                        Tyler, TX 75702
                        Telephone: (903) 630-7165
                        Facsimile: (903) 609-3077
                        greg@smithlegaltx.com

                        Jim Echols
                        Bar No. 06391500
                        SAUNDERS, SCHMIDT & ECHOLS, P.C.
                        202 W. Erwin Street, Suite 200
                        Tyler, TX 75702
                        Telephone: (903) 595-3791
                        Facsimile: (903) 595-3796
                        j.m.echols@att.net

*Appellee-Plaintiff:*   Daniel Scarbrough

*Counsel for Appellee:*   Jeffrey L. Coe
                        Bar No. 24001902
                        1000 N. Church St.
                        P. O. Box 1157
                        Palestine, TX 75082-1157
                        (903) 723-0331
                        (888) 651-6851 (fax)
                        jeff@coelawfirm.com

# Contents

Table of Authorities     ii

Statement of the Case     1

Statement of Facts     2

Issues     5

Summary of Argument     6

Argument:

    I.     Because Scarbrough failed to prove his case, the post-answer default judgment should be reversed and the cause remanded for a new trial.     7

      A. Scarbrough needed to present legally- and factually-sufficient evidence proving the elements of a fraudulent transfer.     8

      B. Scarbrough failed to prove the fraudulent-transfer elements, but instead testified to legal "positions" and speculative "beliefs."     9

    II.     Because the Tarrants lacked notice of the actual trial, due process requires a new trial.     13

    III.     Because the record omits to prove adequate notice of even the initial setting, the Tarrants have been deprived of their ability to show harm.     17

Conclusion and Prayer     19

Certificate of Service     21

Certificate of Compliance     21

Appendices:

    A. Judgment
    B. Notice of Setting

# Authorities

*In re $475,001.16*, 96 S.W.3d 625 (Tex. App.—Houston [1st Dist.] 2002, no pet.) — 15

*Armstrong v. Manzo*, 380 U.S. 545 (1965) — 17

*Bennett v. McDaniel*, 295 S.W.3d 644 (Tex. 2009) — 13

*City of Keller v. Wilson*, 168 S.W.2d 802 (Tex. 2005) — 8

*City of San Antonio v. Pollock*, 284 S.W.3d 809 (Tex. 2009) — 13

*Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444 (Tex. 1996) — 13

*Cox v. Cox*, 298 S.W.3d 726 (Tex. App.—Austin 2009, no pet.) — 19

*Davis v. Berger*, 2000 Tex. App. LEXIS 448 (Tex. App.—Dallas 2000, no pet.) — 7

*Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922 (Tex. 2009) — 16

*Ed Rachal Found. v. D'Unger*, 117 S.W.3d 348 (Tex. App.—Corpus Christi 2003) — 13

*Green v. McAdams*, 857 S.W.2d 816 (Tex. App.—Houston [1st Dist.] 1993, no writ) — 14

*LBL Oil Co. v. Int'l Power Servs., Inc.*, 777 S.W.2d 390 (Tex. 1989) — 13

*Lopez v. Lopez*, 757 S.W.2d 721 (Tex. 1988) — 15

*Maldonado v. Puente*, 694 S.W.2d 86 (Tex. App.—San Antonio 1985, no writ) — 7

*Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402 (Tex. 1998) — 8

*Mathis v. Lockwood*, 166 S.W.3d 743 (Tex. 2005) (per curiam) — 18

*Naan Props., LLC v. Affordable Power, LP*, 2012 Tex. App. LEXIS 271 (Tex. App.—Houston [1st Dist.] 2012, no pet) — 19

*Paradigm Oil, Inc. v. Retamco Operating, Inc.,* 372 S.W.3d 177 (Tex. 2012) — 7

*Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80 (1988) — 15

*Roberson v. Robinson*, 768 S.W.2d 280 (Tex. 1989) — 7

*Sammons v. Elder,* 940 S.W.2d 276 (Tex. App.—Waco 1997, writ denied)          7

*Tilton v. Marshall*, 925 S.W.2d 672 (Tex. 1996)          8

*Williams v. Houston Plants & Garden World, Inc.*, 508 B. R. 11
    (S. D. Tex. 2014)          10

*Wilson v. Indus. Leasing Corp.*, 689 S.W.2d 496
    (Tex. App.—Houston [1st Dist.] 1985, no writ)          18

*Worthen v. Glatzer*, 1999 Tex. App. LEXIS 1913
    (Tex. App.—Dallas 1999, no writ)          14

TEX. BUS. & COM. CODE ANN. § 24.005          10

TEX. BUS. & COM. CODE ANN. § 24.005(a)(1)          9

TEX. LAWYER'S CREED - A MANDATE FOR PROFESSIONALISM, III (11)          16

TEX. R. CIV. P. 245          14

Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*,
    38 TEX. L. REV. 361 (1960)          12

To the Honorable Court of Appeals:

The judgment below cannot stand because, first, it is not supported by factually sufficient proof and, second, the defendants did not have adequate and reasonable notice of the trial session, in violation of due process.

## Statement of the Case

*Nature of the Case*   Suit to set aside a real-property conveyance. Plaintiff Scarbrough alleged it was a fraudulent transfer as defined in the Texas Uniform Fraudulent Transfer Act.

*Trial Court*   Honorable Mark Calhoon, 3rd Judicial District Court

*Course of Proceedings*   Bench trial. A hearing was set for 11 a.m. on January 6. The defendants, who had previously answered, CR 39, did not appear. RR 4. Nor did plaintiff's counsel. *Id.* The court thus reset the case for a "prove up" trial, later that day, at which plaintiff's counsel appeared by telephone. *Id.* After a trial spanning all of ten reported pages (including testimony on remedies and attorney's fees), RR 4-13, the trial court entered a "default judgment" finding a fraudulent transfer and setting aside the challenged conveyance. **App. A.**

While the judgment recites that the defendants were "provided due notice," **App. A**, the trial transcript shows only that the court took judicial notice of its file, which reflected no attempt at notifying defense counsel of the prove-up hearing or offer to let him attend that hearing by telephone.

Upon learning of the judgment, the defendants (collectively, the Tarrants) filed a motion for new trial broadly asserting lack of notice and requesting a hearing. CR 65-66. The motion was overruled by operation of law, without a hearing.

1

## Statement of Facts

**General Background.** Daniel Scarbrough is an attorney practicing in Anderson County. Roger and Denise Tarrant, who live in Anderson County, hired Mr. Scarbrough to defend one of their sons against a felony criminal case. Scarbrough was paid a substantial sum of money. He won an acquittal. Afterwards, Scarbrough and Mr. and Mrs. Tarrant disputed whether Scarbrough was owed additional monies for his legal work.

Scarbrough sued to collect the disputed fees. As that collection suit was approaching trial, Roger and Denise, needing funds for their defense, entered a transaction wherein their adult son, Justin (not the son whom Scarbrough had defended against the criminal charges) would borrow funds from an existing spendthrift family trust established by Denise's parents and would buy Roger's real property. The sales consideration, as recited in the warranty deed, included not only the cash proceeds of this loan but Justin's assumption of two existing loans against the property and his agreement to indemnify Roger against any claims made on the assumed loans. CR 43-44. The sale closed after the verdict was entered in Scarbrough's collection suit. (Scarbrough recovered about $115,000 in that suit, including the debt and attorney's fees. RR Ex. A.) Scarbrough then sued Roger, Denise, Justin and the family trust (the D. A. Tarrant Irrevocable Trust), to set aside the conveyance.

**The Evidence at Trial.** The evidence, fairly stated, was that Roger Tarrant owned an undivided interest in the tracts of land described in Trial Exhibit B, a warranty

deed. RR 7. On November 21, 2014, he deeded that land to Justin, who signed a deed of trust in favor of the D. A. Tarrant Irrevocable Trust. RR 8. The deed of trust indicates that Justin borrowed $52,325 from the trust. RR 8.

At this point in the trial—page 8 of the transcript—the probative evidence stops and surmise take over. The remaining material testimony was as follows:

Q. Now, *is it your position toda*y, that the property described in Plaintiff's Exhibit B, was property that was fraudulently transferred with the intent to hinder, delay, or defraud you in the judgment that you obtained …previously …?

A. Yes, I do. [sic]

Q. *Do you believe* that transfer … would be something that constitutes what we typically call, somebody that's an insider? That their son Justin possessed special knowledge or information being their son …?

A. Yes, I do.

Q. And *is it your position* that **apparently** this trust that *– the trust document isn't of record*, but that this trust was an alter ego of Denise A. Tarrant or Roger Tarrant …?

A. Yes, I do. [sic]

Q. *Do you believe* that the Defendants had actual knowledge of your claim against them prior to the transfer?

A. Absolutely.

. . .

Q. *Do you believe* that Justin Tarrant and Denise and Roger Tarrant have engaged in a conspiracy among themselves in this attempt to damage you?

A. Yes, I do.

Q. Are you asking that this transaction be set aside in its entirety …?

A. Yes.

Q.     And did you have to retain me to file this action …?

A.     Yes.

Q.     Are you asking for reasonable and necessary attorney's fees?

A.     I am. RR 8-11 (emphasis added).

The only other trial proof was counsel's testimony as to attorney's fees and brief follow-up testimony about the requested remedies.

## Issues

## The Failure of Proof at Trial

### 1.

Where the defendant has answered, the plaintiff must prove his claims at trial, even when the defendant fails to attend. Scarbrough thus needed to prove the elements of fraudulent transfer—that the transfer was made either with "actual intent to hinder" collection or "without receiving a reasonably equivalent value in exchange." Did Scarbrough present factually-sufficient evidence to support the trial court's implied finding on either such element? Is there even legally-sufficient evidence of this? And is there legally and factually-sufficient evidence of Scarbrough's derivative claim for conspiracy?

## The Failure of Due Process: A Lack
## of Proper Notice of the Trial Hearing

### 2.

Due process requires that an answering defendant have reasonable notice of trial. Here, a hearing was set for 11 a.m. January 6. The Tarrants failed to appear. But so did Scarbrough's counsel. The district court thus reset the case for "prove up" at a 1:30 p.m. session of court, which Scarbrough's counsel attended by telephone. There was no notice to the Tarrants of the prove-up trial. Does due process require remand for a new trial that *all* parties are invited to attend?

### 3.

The clerk's file includes a "notice of setting" (for the initial, aborted 11 a.m. hearing) with a hearsay notation "CC: Jeffrey Coe; Jim Echols." Neither Mr. Coe nor Mr. Echols appeared at the 11 a.m. session of court. And neither the district clerk's file nor the trial record contains any indication that the filed notice of setting actually was sent. Is a remand required because the record does not prove notice even of the initial, aborted setting?

## Summary of Argument

Because the Tarrants timely answered Scarbrough's collection suit with a general denial, which remained effective at all times, Scarbrough could not win by "default" but had to prove all elements of liability through probative evidence admitted at trial the same as if the Tarrants had been present. Scarbrough did not do this. There was a prove-up hearing. But the evidence did not prove a fraudulent conveyance. On critical elements of his fraudulent-transfer theory, Scarbrough offered only surmise—either an asserted conclusory "position" or a subjective and speculative "belief." Such positions and beliefs are non-probative. Consequently, there was factually-insufficient proof on the essential elements of a fraudulent transfer, requiring that the judgment below be reversed and the cause remanded for a new trial.

Alternatively, due process requires remand for a new trial, because the record lacks the necessary notice to the Tarrants of the prove-up hearing. Here, there are two bases for finding such a failure of notice. First, there was no attempt to notify the Tarrants of the actual, rescheduled trial. And second, there is no evidence of proper notice even of the initial, aborted setting. On motion for new trial, the Tarrants broadly challenged notice. The lack of factually sufficient evidence establishing any such notice relieved the Tarrants of any burden to prove the other *Craddock* requirements, and now requires reversal and remand for a new trial.

6

**Argument**

**I.    Because Scarbrough failed to prove his case, the post-answer default judgment should be reversed and the cause remanded for a new trial.**

This appeal challenges what the courts commonly call a post-answer "default." But that term is something of a misnomer: when a defendant answers suit, he "preserves any issues he has properly joined by his answer." *Maldonado v. Puente*, 694 S.W.2d 86, 91 (Tex. App.—San Antonio 1985, no writ). A general denial thus tasks the plaintiff with proving each element of his claim by probative, factually-sufficient evidence—even when the defendant is noticed for trial but does not appear. *Paradigm Oil, Inc. v. Retamco Operating, Inc.,* 372 S.W.3d 177, 183 (Tex. 2012).

Here, trial was to the court, RR 4, which made no formal findings of fact. On appeal, this Court infers all factual findings necessary to support the judgment, but only insofar as there is factually-sufficient evidence to sustain them. *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989). In appeal from a bench trial, legal-sufficiency and factual-sufficiency attacks can be raised for the first time on appeal. TEX. R. APP. P. 33.1 (d); *see Sammons v. Elder,* 940 S.W.2d 276, 279 (Tex. App.—Waco 1997, writ denied); *Davis v. Berger*, 2000 Tex. App. LEXIS 448, *3 (Tex. App.—Dallas 2000, no pet.).

The Tarrants seek factual- and legal-sufficiency reviews of the evidence supporting the elements of Scarbrough's fraudulent-transfer and conspiracy claims. In a factual-sufficiency review, this Court considers all the evidence and may reverse if the judgment is so against the great weight of the evidence that it is clearly wrong or

manifestly unjust. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998). In a legal sufficiency review the court considers the evidence in the light most favorable to the finding, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.2d 802, 822 (Tex. 2005).

### A. Scarbrough needed to present legally- and factually-sufficient evidence proving the elements of a fraudulent transfer.

Scarbrough's suit raises a claim that the Tarrants made a fraudulent transfer of Roger Tarrant's real property and it seeks to broaden the claim's reach through the allegation of a conspiracy. CR 4, 5-7. The conspiracy allegation, being derivative, will not sustain a judgment if the claim for a fraudulent transfer fails. *See Tilton v. Marshall*, 925 S.W.2d 672, 680-81 (Tex. 1996) (liability for conspiracy depends on participation in some underlying tort). To succeed on the fraudulent-transfer claim, which invokes the Texas Uniform Fraudulent Transfer Act (TUFTA), Scarbrough needed to prove that the conveyance was made either

(a) "with actual intent to hinder, delay, or defraud" a creditor or

(b) "without receiving a reasonably equivalent value in exchange" when the debtor:

    (i) "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or

    (ii) "intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to

8

pay as they became due." TEX. BUS. & COM. CODE ANN. § 24.005(a)(1) & (2).

Scarbrough at trial made no adequate showing or either an "actual intent to hinder" his judgment's collection or the absence of "a reasonably equivalent value in exchange."

### B. Scarbrough failed to prove the fraudulent-transfer elements, but instead testified to legal "positions" and speculative "beliefs."

Nowhere in the civil jurisprudence is the need of probative evidence greater than with matters affecting ownership of Texas real property. Certainly, an otherwise valid real-property conveyance should not be invalidated in the absence of probative and factually sufficient evidence of some basis for doing so. This is where Scarbrough's judgment fails.

The entire trial record spans ten pages. Only six transcript pages address liability. RR 5-10. The testimony there is probative only of the facts that:

- Scarbrough obtained a judgment against Roger and Diane Tarrant in a prior proceeding. RR 5-6; PX A.

- At about that time, Roger signed a warranty deed conveying certain items of real property to Justin Tarrant. RR 7; PX B.

- The deed recites that it was given in exchange for no less than five items of consideration: (1) "[c]ash," (2) "a note … in the principal amount of FIFTY TWO THOUSAND THREE HUNDRED TWENTY FIVE AND NO/100 DOLLARS," secured by a vendor's lien and a deed of trust, (3) assumption of a first-lien note executed by Roger Tarrant in the principal amount of $40,000, (4) assumption of a second-lien note, also executed by Roger Tarrant, in the principal amount of $15,000, and (5) promises to perform Roger Tarrant's duties under the deeds of trust associated with the first- and second-lien notes being

9

assumed and to indemnify Roger Tarrant from any loss associated with a breach or default under the first- or second-lien deeds of trust. PX B.

- The defendants had actual knowledge of Scarbrough's claim before the conveyance. RR 9.

- The Tarrants' responses to interrogatories in aid of collection indicated they had no substantial assets. *Id.*

This proof is legally insufficient to sustain an implied finding either that the Tarrants entered the conveyance with actual intent to hinder Scarbrough or that they did not exchange reasonably equivalent value. It at most shows an approximate correlation in time between the collection suit's disposition and the conveyance, which was itself a legitimate means to finance the costs incurred in defending the collection suit—costs made necessary by Scarbrough's suit. Because it is at least equally consistent with the lack of actual intent to hinder as with its converse, this correlation in time is no evidence from which to infer intent. It likewise is no evidence of the lack of an equivalent-value exchange. Indeed, there is no evidence valuing the land Roger sold. The only evidence probative of value is evidence of the positive value Justin gave in exchange.

Here, it could be tempting to infer intent to hinder from the fact the land was conveyed to an apparent insider, which is a factor the courts may consider when evaluating a conveyance for intent to defraud. TEX. BUS. & COM. CODE ANN. § 24.005. But the law is clear that this factor standing alone is never enough to justify judgment that a conveyance is fraudulent. *Williams v. Houston Plants & Garden World, Inc.*, 508 B.

10

R. 11, 18 (S. D. Tex. 2014) ("Williams has shown that a single badge of fraud is present—that the transfers were made to insiders. 'As a matter of law, a finding of fraudulent intent cannot properly be inferred from the existence of just one badge of fraud.'"). This is doubly true in our case, given that the deed recites substantial consideration from Justin and is otherwise silent on the value of the real property. The only probative inference in such a situation is that the consideration given is reasonable equivalent to that received.

The evidence discussed above is of course also factually insufficient to sustain any implied finding of an actual intent to hinder or of the lack of a reasonably equivalent value given in exchange. These facts, which do not sustain a probative inference of intent to hinder or lack of equivalent value even when considered in isolation, fall absolutely flat in the face of Justin's substantial consideration—including cash, a $52,000 note, and assumption of two prior liens in a total principal amount of $55,000—which strongly tends to negate any actual intent to hinder and lack of reasonably equivalent consideration. Absent further probative evidence, the correlation in time of the property's sale to an apparent insider is thus legally and factually insufficient. And there is no other probative evidence.

The remainder of the record respecting liability is non-probative and thus amounts to nothing. It consists only in Scarbrough's self-serving surmise and bare conclusions. As stated earlier, he asserted that:

11

- It was his "position" that the property "was fraudulently transferred with the intent to hinder, delay, or defraud" him. RR 8-9.

- He "believe[d]" the transfer was "an attempt to prevent" him from seeking to collect on his judgment from the transferred property. *Id.* at 9.

- He "believe[d]" Justin Tarrant would be "an insider" and would have had some unidentified "special knowledge or information … relating to the existence of the property." *Id.*

- It was his "position that apparently" the trust that loaned Justin a portion of the purchase money—the D. A. Tarrant Irrevocable Trust—"was an alter ego of Denise A. Tarrant or Roger Tarrant." *Id.*

- He "believe[d]" the transfer caused him harm because the transferred property "was one of the few … tangible assets that were available to collect." *Id.* at 10.

- He "believe[d]" the Tarrants had conspired in an attempt to damage him. *Id.*

To qualify as probative of a fact, an item of evidence must support an inference that the questioned fact is more likely true than not. *See* Calvert, 38 Tex. L. Rev. *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362-63 (1960). Scarbrough's "positions" and interspersed speculative personal "beliefs" will sustain no such inference of fact, either of actual intent to hinder or transferring an asset without receiving a reasonably equivalent value in exchange. Tex. Bus. & Com. Code Ann. § 24.005(a). They are as a matter of law simply not probative as evidence.

A party's "positions" are not evidence but are mere assertions or conclusions— items to be proved by other facts. So it is with a person's beliefs: they, too are not factual but are mere conclusory assertions of what the party wishes or surmises the facts to be.

They have zero probative value and thus will not support a judgment—even when admitted at trial without objection. *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (conclusory allegations have no probative value); *Continental Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 452 (Tex. 1996) (employee's subjective beliefs "'are no more than conclusions' and do not raise a fact issue"); *accord Ed Rachal Found. v. D'Unger*, 117 S.W.3d 348, 355 (Tex. App.—Corpus Christi 2003), rev'd in part on other grounds, 203 S.W.3d 330 (Tex. 2006); *see generally* Calvert, 38 TEX. L. REV. at 362-63.

Any belief that the transfer was intended to hinder the collectability of Scarbrough's judgment is speculative, pure and simple. It would be equally speculative to conclude that the property was not given in exchange for consideration of "reasonably equivalent value."

Because there is factually insufficient evidence (and likely legally insufficient evidence) to sustain implied findings of the fraudulent-transfer elements, the judgment below should be reversed and the cause remanded for a new trial. *Bennett v. McDaniel*, 295 S.W.3d 644, 645 (Tex. 2009) (when the evidence at trial is legally insufficient to sustain post-answer default judgment, the proper remedy is to remand for a new trial, not to render).

## II.     Because the Tarrants lacked notice of the actual trial, due process requires a new trial.

Due process requires that every party that has appeared in the case receive notice of the trial. *See LBL Oil Co. v. Int'l Power Servs., Inc.*, 777 S.W.2d 390, 390-91 (Tex. 1989).

That did not happen here. A trial was scheduled for 11 a.m. on January 6. But when the case was called that morning, the trial could not proceed, because *neither* side was ready. Neither Scarbrough's counsel nor anyone representing the defendants was present. RR 4-5. So the trial court reset trial for a time when Scarbrough's counsel could participate—a 1:30 p.m. session of court, which Scarbrough's counsel could attend by telephone. RR 4. The Tarrants were not present at this trial—they were given no chance to participate. As the trial record indicates, no one told them or their counsel of the rescheduled trial or of the opportunity to appear by telephone. *Id.* Only Scarbrough and his counsel received that privilege and accommodation. This failure of notice and one-way accommodation of only Scarbrough's counsel, with no notice to the Tarrants' counsel, obviously violated the Tarrants' due-process rights.

The clear rule is that all parties who have answered are entitled to 45 days' notice of an initial trial setting, and are entitled to reasonable notice of *any* further or rescheduled trial setting or merits hearing thereafter, both as a matter of Texas procedure, TEX. R. CIV. P. 245, and of due process under the U. S. Constitution's Fourteenth Amendment. *See LBL Oil Co.*, 777 S.W.2d at 390-91. Notice merely of an initial setting does not suffice—not even when the party has failed to appear at the prior setting. *See Green v. McAdams*, 857 S.W.2d 816, 819 (Tex. App.—Houston [1st Dist.] 1993, no writ) (rejecting argument that notice of initial setting was "constructive notice" of the reset trial session); *accord Worthen v. Glatzer*, 1999 Tex. App. LEXIS 1913, *8 (Tex. App.—Dallas 1999, no writ). A party who has answered merits reasonable notice of the

14

actual default-judgment hearing. *In re $475,001.16*, 96 S.W.3d 625, 627 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Green*, 857 S.W.2d at 819 (reversing post-answer default judgment because defendants, who failed to appear at initial setting after receiving dismissal notice, were entitled to reasonable notice of rescheduled trial date); *Worthen*, 1999 Tex. App. LEXIS 1913 at *8 (where plaintiff requested a default judgment at the noticed September 9 setting but there was no notice given of the September 13 setting at which the default judgment was rendered, there was a fatal lack of notice); *Maldonado*, 694 S.W.2d at 87 (defendant's failure to appear at noticed jury selection time was not a failure to appear for trial, did not dispense with requirement that defendant be given notice of the merits trial, and did not support entry of post-answer default judgment). The absence of such notice requires the grant of a new trial—without necessity of any further showing: to additionally require proof of the Craddock elements "would violate due process." *Id.; see Lopez v. Lopez,* 757 S.W.2d 721, 723 (Tex. 1988) (defendant who lacks notice of a trial setting is not required to establish a meritorious defense under *Craddock* in order to obtain a new trial following a post-answer default); *see also Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 85-87 (1988).

The Tarrants' failure to appear at the 1:30 trial was not due to inadvertence, to misunderstanding, or to any reason but the lack of notice. The Tarrants broadly challenged this lack of notice below, in their motion for new trial. CR 65 ("Defendants' attorney, Jim Echols, did not receive notice of hearing for the January 6, 2017 final hearing"; "Defendants' attorney, Jim Echols' non-appearance at this hearing was due

15

to not knowing the hearing was taking place, rather than due to an intentional act or the result of conscious indifference."). The failure to grant the requested new trial was error.

What is more, fundamental fairness and professional courtesy should have required that when the accommodation was afforded to Scarbrough's counsel, notifying him by phone and permitting him to appear at the "prove up" by telephone, an equivalent accommodation should have been extended to the Tarrants. *See Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 929 (Tex. 2009) (noting that "judges and lawyers should, and in most instances do, extend common and professional courtesies to other judges and lawyers"). The Texas Lawyer's Creed, cited in *Dolgencorp*, certainly takes this view, stating that "I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intention to proceed." TEX. LAWYER'S CREED - A MANDATE FOR PROFESSIONALISM, III (11). Adherence to the Creed would have required at least a phone call to Mr. Echols to notify him of the prove up and offer to let him participate in the hearing by telephone. Here, the record is silent on any such notice or accommodation. As a result, the trial and judgment violated fundamental notions of fairness and professional courtesy.

**III.** **Because the record omits to prove adequate notice of even the initial setting, the Tarrants have been deprived of their ability to show harm.**

The record fails to prove proper notice of even the initially scheduled, morning setting, at which even Scarbrough was not ready to proceed. The court's file contains a "notice of setting" respecting the 11 a.m. proceeding.[1] But that hearsay notice does not prove it was sent to the Tarrants' counsel over the challenge, in the Tarrants' motion for new trial, CR 65, stating that no such notice was received. The document includes a notation "CC: Jeffrey Coe, Jim Echols." Supp. CR __ (attached). But this is not evidence that the document was actually mailed to Mr. Echols. And here, an inference that notice was *not* sent is raised by the fact that Scarbrough's own counsel did not appear at the appointed setting, RR 4, and the record does not indicate he knew of it in advance.

A failure of notice "deprives a party of his constitutional right to be present at the hearing, to voice his objections in an appropriate manner, and results in a violation of fundamental due process. *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965); *Green*, 857 S.W.2d at 819. Thus, when a party disputes that notice was properly sent, it falls to the plaintiff to actually prove the matter.

> It is true that notice properly sent pursuant to Rule 21a raises a presumption that notice was received. [citation omitted] But we cannot presume that notice was properly sent; when that is challenged, it must be

---

[1] The Tarrants have requested that the district clerk prepare a supplemental clerk's record consisting of this notice. A copy of the notice of setting is attached.

proved according to the rule. *Mathis v. Lockwood*, 166 S.W.3d 743, 745 (Tex. 2005) (per curiam).

So Scarbrough was put to the task of proving the asserted notice was sent to counsel. He failed to do so. The record reflects only that the trial court took judicial notice of its file. RR 4. But that was insufficient.

"A certificate by a party or an attorney of record, or the return of the officer, or the affidavit of any person showing service of a notice shall be prima facie evidence of the fact of service." TEX. R. CIV. P. 21a. In this case, the record contains no such certificate, return receipt, affidavit, or other testimony purporting to certify any actual sending of notice. This was fatal to the post-answer default judgment in *Mathis v. Lockwood*—even though counsel in that case gave his oral assurance that he had served the trial notice (an assurance that is lacking here). 166 S.W.3d at 745.[2] And without proper evidence the notice was actually sent, there can be no presumption that counsel received any such notice. *Id.* So it is here. The record contains no evidence, or even unsworn assertion, from which to infer that the clerk actually mailed the notice of hearing to Mr. Echols.

Moreover, the notice was ineffectual in yet a final respect: it did not identify that the case was set for the merits trial. It said only that the case had "been set for FINAL."

---

[2] Here, as stated, the judgment contains a pro forma allegation that "due notice" was provided. CR 41; App. A. But that notice was effectively rebutted when Scarbrough's counsel also failed to appear at the appointed setting. *See, e.g., Wilson v. Indus. Leasing Corp.*, 689 S.W.2d 496, 497 (Tex. App.—Houston [1st Dist.] 1985, no writ) ("Where a judgment recitation [of notice] is effectively rebutted by other evidence in the record, it is no longer taken to be true.").

18

Supp. CR. ___ (attached). In *Maldonado v. Puente*, a notice of setting for "jury selection" was held insufficient notice consistent with due process to allow trial to proceed after the defendant did not show up for jury selection.[3] 694 S.W.2d at 91. Here, notice of a setting for "FINAL" is similarly inadequate to allow a prove-up trial to proceed at a later court session in the Tarrants' absence. The plaintiff has the burden of proving the defendant was served in strict compliance with the rules. *Cox v. Cox*, 298 S.W.3d 726, 733 (Tex. App.—Austin 2009, no pet.); *Naan Props., LLC v. Affordable Power, LP*, 2012 Tex. App. LEXIS 271, *5 (Tex. App.—Houston [1ˢᵗ Dist.] 2012, no pet).

## Conclusion and Prayer

Because there is factually insufficient evidence of the required elements of a fraudulent transfer and also because there was a lack of proper notice to the Tarrants, the judgment below should be reversed and the cause remanded for trial.

Respectfully submitted,

_/s/ Gregory D. Smith_
Gregory D. Smith
Bar No. 18600600
SMITH LEGAL PLLC
110 N. College Ave., Suite 1120

---

[3] What the notice of the 11 a.m. setting actually stated matters. In *Maldonado v. Puente*, the parties were notified by letter to appear for jury selection "on that date" and further notified in the same letter that their case "will be tried at a subsequent date." 694 S.W.2d at 87. The defendants and their counsel arrived at court 40 minutes after the appointed setting. The plaintiff had been granted a post-answer default judgment in the meantime. On appeal, because the notice of setting was for jury selection, and stated that trial would occur "at a subsequent date," the failure to appear at the appointed time for jury selection could not support a post-answer default on the merits. *Id.*

Tyler, TX 75702
Telephone: (903) 630-7165
Facsimile: (903) 609-3077
greg@smithlegaltx.com


___/s/ *Jim Echols*_____

Jim Echols
Bar No. 06391500
SAUNDERS, SCHMIDT & ECHOLS, P.C.
202 W. Erwin Street, Suite 200
Tyler, TX 75702
Telephone: (903) 595-3791
Facsimile: (903) 595-3796
j.m.echols@att.net

**Attorneys for Appellants**

## Certificate of Service

This brief has been served on all counsel of record via e-filing on this 31st day of July 2017.

_/s/ Gregory D. Smith_
Gregory D. Smith

## Certificate of Compliance

1. This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4 because it contains 4628 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(2)(B).

2. This brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

Dated: July 31, 2017.

_/s/ Gregory D. Smith_
Gregory D. Smith

NO. DCCV16-017-3

| | | |
|---|---|---|
| DANIEL R. SCARBROUGH, Plaintiff | § § § | IN THE DISTRICT COURT |
| V. | § § | 3RD JUDICIAL DISTRICT |
| ROGER TARRANT, ET AL, Defendants | § § § § | OF ANDERSON COUNTY, TEXAS |

## DEFAULT JUDGMENT

On January 6, 2017, came on to be heard Plaintiff's, DANIEL R. SCARBROUGH, request for relief. Plaintiff appeared in person and by attorney of record, Jeffrey L. Coe. Defendant, ROGER TARRANT, failed to appear after being provided due notice of the hearing and has wholly made default. Defendant, DENISE TARRANT, failed to appear after being provided due notice of the hearing and has wholly made default. Defendant, JUSTIN TARRANT, failed to appear after being provided due notice of the hearing and has wholly made default. Defendant, THE D.A. TARRANT IRREVOCABLE TRUST, failed to appear after being provided due notice of the hearing and has wholly made default.

On the claim for violations of the Uniform Fraudulent Transfer Act and civil conspiracy, the court finds in favor of Plaintiff, DANIEL R. SCARBROUGH, and against Defendants, ROGER TARRANT, DENISE TARRANT, JUSTIN TARRANT, and THE D.A. TARRANT IRREVOCABLE TRUST. IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Warranty Deed with Vendor's Lien and Deed of Trust attached hereto as Exhibit "A" and "B" respectively, are hereby SET ASIDE in their entirety and are NULL AND VOID.

IT IS FURTHER ORDERED, ADJUDGED and DECREED that Defendants, ROGER TARRANT, DENISE TARRANT, JUSTIN TARRANT, and THE D.A. TARRANT IRREVOCABLE TRUST, their officers, agents, servants, and employees are hereby enjoined from transferring, conveying, assigning, selling, or otherwise divesting ownership of the property described in

DEFAULT JUDGMENT

Page 1 of 2 Pages

Exhibits "A" and "B" attached hereto and incorporated herein by this reference the same as if fully copied and set forth at length and that the District Clerk of Anderson County, Texas issue a Writ of Injunction upon the request of PLAINTIFF DANIEL R. SCARBROUGH enjoining Defendants, ROGER TARRANT, DENISE TARRANT, JUSTIN TARRANT, and THE D.A. TARRANT IRREVOCABLE TRUST, their officers, agents, servants, and employees from transferring, conveying, assigning, selling, or otherwise divesting ownership of the property described in Exhibits "A" and "B" attached hereto and incorporated herein by this reference the same as if fully copied and set forth at length.

IT IS FURTHER ORDERED that PLAINTIFF DANIEL SCARBROUGH is hereby authorized to levy execution against the property described in Exhibits "A" and "B".

Plaintiff, DANIEL R. SCARBROUGH, is entitled to the sum of $3,000.00 (Three Thousand and No/100 Dollars), as attorney's fees, to bear interest at the legal rate per annum from the date this judgment is signed until paid.

Costs of court are hereby taxed against Defendants.

IT IS ORDERED that Plaintiff, DANIEL R. SCARBROUGH, is entitled to enforce this judgment through abstract, execution and any other process necessary.

All relief not granted herein is expressly denied.

SIGNED on January ___24___, 2017.

HONORABLE ~~JEFF DORAN~~ MARK CALHOON
JUDGE PRESIDING

DEFAULT JUDGMENT

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## Warranty Deed with Vendor's Lien

Date:       November 21, 2014

Grantor:    ROGER TARRANT

Grantor's Mailing Address:

> P. O. Box 361
> Frankston, TX  75763

Grantee:    JUSTIN TARRANT

Grantee's Mailing Address:

> P. O. Box 361
> Frankston, TX  75763

Consideration:

Cash and a note of even date executed by Grantee and payable to the order of The D. A. Tarrant Irrevocable Trust in the principal amount of FIFTY TWO THOUSAND THREE HUNDRED TWENTY FIVE AND NO/100 DOLLARS ($52,325.00). The note is secured by a vendor's lien and superior title retained in this deed in favor of The D. A. Tarrant Irrevocable Trust and by a deed of trust of even date from Grantee to Terry M. Thorn, trustee; and Grantee's assumption and agreement to pay, according to their terms a first-lien note and a second lien note, the first lien note is executed by Grantor, and payable to the order of Sandra J. Ellis, Denise A. Tarrant, Judy K. Hyde, Janet S. Wilson, Independent Executor of the Estate of Calvin Eugene Dickerson, Deceased in the principal amount of $40,000.00. The first-lien note is secured by deed of trust dated 11/27/2012 and recorded in the real property records of Henderson County, Texas. As further consideration Grantee promises to keep and perform all the covenants and obligations of the grantor named in that deed of trust and to indemnify, defend, and hold Grantor harmless from any loss, attorney's fees, expenses, or claims attributable to breach or default of any provision of this assumption by Grantee. The second-lien note

Warranty Deed with Vendor's Lien - Page 1

Ex "A"

is payable to the order of James D. Hankins in the principal amount of $15,000.00. The second-lien note is secured by a second and inferior vendor's lien against, and superior title to, the Property and is secured by a second-lien deed of trust dated 10/17/2014 and recorded in Vol. 2437, Page 452, Real Property Records of Henderson County, Texas. As further consideration Grantee promises to keep and perform all the covenants and obligations of the grantor named in that deed of trust and to indemnify, defend, and hold Grantor harmless from any loss, attorney's fees, expenses, or claims attributable to breach or default of any provision of this assumption by Grantee.

**Property (including any improvements):**

All of Grantor's undivided interest in and to all that certain lot, tract, or parcel of land located in Henderson County, Texas, and being more particularly described on Exhibit "A" attached hereto, incorporated herein, and made a part hereof for all purposes

**Reservations from Conveyance:**

None.

**Exceptions to Conveyance and Warranty:**

Liens described as part of the Consideration and any other liens described in this deed as being either assumed or subject to which title is taken; validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing instruments, other than conveyances of the surface fee estate, that affect the Property; and taxes for 2014, which Grantee assumes and agrees to pay, but not subsequent assessments for that and prior years due to change in land usage, ownership, or both, the payment of which Grantor assumes.

Grantor, for the Consideration and subject to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty, grants, sells, and conveys to Grantee the Property, together with all and singular the rights and appurtenances thereto in any way belonging, to have and to hold it to Grantee and Grantee's heirs, successors, and assigns forever. Grantor binds Grantor and Grantor's heirs and successors to warrant and forever defend all and singular the Property to Grantee and Grantee's heirs, successors, and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof, except as to the Reservations from Conveyance and the Exceptions to Conveyance and Warranty.

The vendor's lien against and superior title to the Property are retained until each note described is fully paid according to its terms, at which time this deed will become

Warranty Deed with Vendor's Lien - Page 2

absolute.

The D. A. Tarrant Irrevocable Trust at Grantee's request, has paid in cash to Grantor that portion of the purchase price of the Property that is evidenced by the note. The first and superior vendor's lien against and superior title to the Property are retained for the benefit of The D. A. Tarrant Irrevocable Trust and are transferred to The D. A. Tarrant Irrevocable Trust without recourse against Grantor.

When the context requires, singular nouns and pronouns include the plural.

_____
ROGER TARRANT


STATE OF TEXAS                    )

COUNTY OF ANDERSON                )

This instrument was acknowledged before me on _November 21_, 2014 by ROGER TARRANT

_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:
Law Offices of Terry M. Thorn
608 E. Crawford Street
Palestine, TX 75801
(903) 729-6087
(903) 729-7605



DOROTHY HARRIS
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 10-31-2016

Warranty Deed with Vendor's Lien - Page 3

45

TRACT ONE

All that certain lot, tract, or parcel of land situated in Henderson County, Texas, on the Thomas Chaffin League, A-4 and being a part of the 104.00 acre Tract One conveyed to Sallie Costlow by Edna Lee Owens et al by deed dated September 3, 1976 and recorded in Volume 795, Page 737 of the Henderson County Deed Records. Said Lot, tract, or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at a 1/2' iron rod set at the occupied Southeast corner of the 104.00 acre tract, the West line of the D.J. Tarrant 134.00 acre tract recorded in Volume 1452, Page 258 of Real Property Records of Henderson County and Northeast Corner of the Glen S. Van Noy 104.00 acre tract recorded in Volume 1412, Page 210;

THENCE South 86 Degrees 59 minutes West, along fence, 1849.10 feet to a 1/2' iron rod set for the Southwest corner of the Costlow 104.00 acre tract, in the East line of the D. J. Tarrant 55.499 acre tract recorded in Volume 1264, Page 633 of the Henderson

County Deed Records; WITNESS:   16' Forked Elm South 50 degrees East 6.0 feet;

THENCE North 0 degrees 35 minutes 37 seconds West, along the East line of the 55.499 acre tract, 1873.45 feet to a 1/2' iron rod set at the Southwest corner of the Eva Merle Richardson 26.97 acre tract surveyed this date and being South 0 degrees 35 minutes and 37 seconds East 50.00 feet from the Northeast corner of the 55.499 acre tract;
THENCE  North 86 degrees 50 minutes 20 second East 1847.58 feet to a 1/2' iron rod set in the East line of the 104.00 acre tract, South 0 degrees 41 minutes 30 seconds East 592.10 feet from its Northeast Corner; WITNESS; 30' Post Oak South 45 degrees West 6.2 feet, 8' Post Oak South 65 degrees West 39.0 feet;

THENCE South 0 degrees 41 minutes 30 second East 1942.55 feet to the place of beginning and containing 80.92 acres of land.

Including a 15' wide road easement further described as follows:

All that certain lot, tract, or parcel of land situated in Henderson County, Texas, on the Felix Parks Survey, A-647 and the C. L. Owens Survey, A-1182 and being the East 15.00 foot of the 55.499 acre tract conveyed to D. J. Tarrant by Harold James Smith and wife Maria Kay Smith by deed dated January 25, 1989 and recorded in Volume 1264, Page 633 of the Henderson County Deed Records. Said lot, tract, or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at a 1/2' iron rod found at the Northeast corner of the 55.499 acre tract and the Northeast corner of the C. L. Owens Survey, in the West line of the Eva Merle Richardson 26.97 acre tract surveyed this date"

THENCE SOUTH 0 degrees 35 minutes 37 seconds East, at 50.00 feet pass the Southwest Corner of the 26.97 acre tract and in all 3990.73 feet to a 1/2' iron rod found at the Southeast Corner of the 55.499 acre tract, in the East margin of County Road 4224;

EXHIBIT "A" CONTINUED

46

THENCE SOUTH 89 degrees 44 minutes West 15.00 feet to a 1/2" iron rod set in County Road 4244;

THENCE NORTH 0 degrees 35 minutes 37 seconds West 3990.73 feet to a 1/2" iron rod set in the North line of the 55.499 acre tract;

THENCE NORTH 89 degrees 44 minutes East 15.00 feet to the place beginning and containing 1.37 acres of land.

TRACT TWO

All that certain lot, tract or parcel of land situated in the C. L. Owens Survey Abstract 1182, the Estevan Cazenova Survey Abstract 129 and the Felix Parks Survey Abstract 647, Henderson County, Texas and being a portion of a certain called 85.9 acre tract described as First Tract and a portion of a certain 12.1 acre tract described as Second Tract and all of a certain called 2 acre tract described as Third Tract in deed from Foy H. Owens, et ux to Harold J. Smith, et ux, recorded in Volume 927 Page 619 of the Deed Records of Henderson County. Said tract or parcel of land being more particularly described by metes and bounds as follows:

Beginning at a 1/2" I.R. found for the original Northwest corner of the C.L. Owens Survey and the most Southern Southwest corner of the William W. Hawkins Survey Abstract 347, and in the East line of the Estevan Cazenova Survey. Witness: A 24" Post Oak Stump bears N73 degrees 56'E 38.3 feet and a 16" Elm Stump bears N75 degrees 29'E 34.6 feet;

THENCE:  N89 degrees 44'28"E with the North line of the C.L. Owens tract, the same being the South line of a 24.354 acre tract recorded in Volume 681 Page 690 of the Deed Records of Henderson County, 1680.28 feet to a 1/2" I. R. set for the Northeast corner to the C.L. Owens Survey, the same being the most Southern Southeast corner of the William W. Hawkins Survey and in the occupied West Line of the Thomas Chaffin Survey;

THENCE:  S00 degrees 35'37"E with the occupied West line of the Thomas Chaffin Survey, the same being the East line of the C. L. Owens Survey and the East line of the Felix Parks Survey at 2247.61 feet passing the Southeast corner of the C. L. Owens Survey for a total distance of 3990.73 feet to a 1/2" I. R. found for the Southeast corner of this tract;

THENCE:  S89 degrees 43'55"W 37.50 feet for the most Southern Southwest corner of this tract;

THENCE:  N00 degrees 35'37"W 2645.75 feet being 37.5 feet parrallel to the West line of the Thomas Chaffin Survey to a 1/2" I. R. set for the Northeast corner of a 10 acre tract

THENCE:  S89 degrees 43'55"W. 1442.53 feet with the center line of a present public road and being in the Northeast line of a 2.154 acre tract described in Volume 681 Page 690 of the Deed Records of Henderson County. Witness: A 1/2" I. R. bears N89 degrees 43'55"E 16.36 feet;

EXHIBIT "A" CONTINUED

THENCE:   N35 degrees 17'21"W 351.76 feet with the center line of said public road to the South corner of Third tract called 2 acres and being in the West line of the C. L. Owens Survey and the East line of the Estevan Cazenova Survey;

THENCE:   N35 degrees 30'50"W 341.89 feet continuing with the said center line of public road to an angle in said road.

THENCE:   N32 degrees 57'36"W 286.13 feet continuing with the said center line of public road to the Northwest corner of the above mentioned 2 acre tract. Witness: A 1/2" I. R. bears N89 degrees 43'55"E 25.00 feet;

THENCE:   N89 degrees 43'55"E 338.18 feet with the North line of said 2 acre tract to a 1/2" I. R. set in the East line of the E. Cazenova Survey and the West line of the C. L. Owens Survey

Harold J. Smith, 55.499 AC., Henderson Co., Owens A-1182, Cazenova A-129, Parks A-647

THENCE:   N00 degrees 35'37"W 553.97 feet with the West line of the Owens Survey to the place of beginning and containing 55.499 acres of land.

SAVE AND EXCEPT

a 2 acre tract or parcel of land, a part of the C. L. Owens Survey A-129, Henderson County, Texas, also a part of that as described as Third Tract recorded in Volume 1264 Page 633 of the Deed of Records of Henderson County, Texas and being more fully described by metes and bounds to wit in Exhibit "A" attached hereto and made a part hereof.

*TRACT THREE*

All that certain lot, tract or parcel of land, situated in Henderson County, State of Texas, in the W. W. HAWKINS SURVEY, Abstract No. 347; however, in some Instruments filed for record with the County Clerk of Henderson County, Texas said tract is included in the C. L. Owens Survey, Abstract No. 1182, thru error. Said tract or parcel of land is more particularly described by metes and bounds as follows, to-wit:

BEGINNING at a 1/2 in. iron rod at the Northwest corner of the C. L. Owens Survey, Abstract No. 1182, Witness a 24 in. Post Oak Brs. North 73 Deg. 58 Min. East 38.30 feet, and in a 16 in. Elm Brs. North 75 deg. 29 Min. East 34.6 feet;

THENCE NORTH 00 Deg. 35 Min. 37 Sec. West, and along a fence, a distance of 631.23 feet to a 1/2 in. Iron Rod at the Northwest corner of this tract; said point being in the South Boundary Line of the Xenia Miller Tract or parcel of land;

THENCE North 89 Deg. 43 Min. 55 Sec. EAST, along a fence, and the South Boundary Line of the said Xenia Miller tract, a distance of 1680.27 feet to a 3/8ths in. Iron Rod for the Northeast Corner of this tract, and a Southeast corner of the Xenia Miller tract;

EXHIBIT "A" CONTINUED

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## Deed of Trust

### Terms

**Date:**   November 21, 2014

**Grantor:**   JUSTIN TARRANT

**Grantor's Mailing Address:**

P. O. Box 361
Frankston, Anderson County, Texas 75763

**Trustee:**   Terry M. Thorn

**Trustee's Mailing Address:**

608 E. Crawford
Palestine, Texas 75801

**Lender:**   THE D. A. TARRANT IRREVOCABLE TRUST

**Lender's Mailing Address:**

Post Office Box 361
Frankston, TX 75763

**Obligation**

**Note:**

Date:   November 21, 2014

Original principal amount:  $52,325.00

Borrower:   Justin Tarrant

–1–

Ex "B"

49

Lender:        The D. A. Tarrant Irrevocable Trust

Maturity date: November 21, 2044

Terms of Payment: As provided in the note.

Other Debt: None.

**Property (including any improvements):**

All of Grantor's undivided interest in and to all that certain lot, tract, or parcel of land in Henderson County, Texas, and being more particularly described on Exhibit A attached hereto, incorporated herein, and made a part hereof for all purposes.

**Prior Lien:** A first-lien note and a second lien note, the first lien note is executed by Roger Tarrant, and payable to the order of Sandra J. Ellis, Denise A. Tarrant, Judy K. Hyde, Janet S. Wilson, Independent Executor of the Estate of Calvin Eugene Dickerson, Deceased in the principal amount of $40,000.00. The first-lien note is secured by deed of trust dated 11/27/2012 and recorded in the real property records of Henderson County, Texas. The second-lien note is payable to the order of James D. Hankins in the principal amount of $15,000.00. The second-lien note is secured by a second and inferior vendor's lien against, and superior title to, the Property and is secured by a second-lien deed of trust dated 10/17/2014 and recorded in Vol. 2437, Page 452, Real Property Records of Henderson County, Texas.

**Other Exceptions to Conveyance and Warranty:**

Liens described as part of the Consideration and any other liens described in the deed to Grantor as being either assumed or subject to which title is taken; validly existing easements, rights-of-way, and prescriptive rights, whether of record or not; all presently recorded and validly existing instruments, other than conveyances of the surface fee estate, that affect the Property; and taxes for 2014, but not subsequent assessments for that and prior years due to change in land usage, ownership, or both.

**A.    Granting Clause**

For value received and to secure payment of the Obligation, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

–2–

**B.        Grantor's Obligations**

B.1.   Grantor agrees to maintain all property and liability insurance coverages with respect to the Property, revenues generated by the Property, and operations on the Property that Lender reasonably requires ("Required Insurance Coverages"), issued by insurers and written on policy forms acceptable to Lender, and as to property loss, that are payable to Lender under policies containing standard mortgage clauses, and deliver evidence of the Required Insurance Coverages in a form acceptable to Lender before execution of this deed of trust and again at least ten days before the expiration of the Required Insurance Coverages.

B.2    Grantor agrees to-

    a.     keep the Property in good repair and condition;

    b.     pay all taxes and assessments on the Property before delinquency, not authorize a taxing entity to transfer its tax lien on the Property to anyone other than Lender, and not request a deferral of the collection of taxes pursuant to section 33.06 of the Texas Tax Code;

    c.     defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

    d.     obey all laws, ordinances, and restrictive covenants applicable to the Property;

    e.     keep any buildings occupied as required by the Required Insurance Coverages;

    f.     if the lien of this deed of trust is not a first lien, pay or cause to be paid all prior lien notes and abide by or cause to be abided by all prior lien instruments; and

    g.     notify Lender of any change of address.

**C.    Lender's Rights**

C.1.   Lender or Lender's mortgage servicer may appoint in writing one or more substitute trustees, succeeding to all rights and responsibilities of Trustee.

-3-

C.2.   If the proceeds of the Obligation are used to pay any debt secured by prior liens, Lender is subrogated to all the rights and liens of the holders of any debt so paid.

C.3.   Lender may apply any proceeds received under the property insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy. If the Property is Grantor's primary residence and Lender reasonably determines that repairs to the improvements are economically feasible, Lender will make the property insurance proceeds available to Grantor for repairs.

C.4.   Notwithstanding the terms of the Note to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

C.5.   If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

C.6.   **COLLATERAL PROTECTION INSURANCE NOTICE**

In accordance with the provisions of Section 307.052(a) of the Texas Finance Code, the Beneficiary hereby notifies the Grantor as follows:

(A)    the Grantor is required to:

    (i)     keep the collateral insured against damage in the amount the Lender specifies;

    (ii)    purchase the insurance from an insurer that is authorized to do business in the state of Texas or an eligible surplus lines insurer; and

    (iii)   name the Lender as the person to be paid under the policy in the event of a loss;

(B)    the Grantor must, if required by the Lender, deliver to the Lender a copy of the policy and proof of the payment of premiums; and

—4—

(C)   if the Grantor fails to meet any requirement listed in Paragraph (A) or (B), the Lender may obtain collateral protection insurance on behalf of the Grantor at the Grantor's expense.

C.7.   If a default exists in payment of the Obligation or performance of Grantor obligations and the default continues after any required notice of the default and the time allowed to cure, Lender may-

a.   declare the unpaid principal balance and earned interest on the Obligation immediately due;

b.   exercise Lender's rights with respect to rent under the Texas Property Code as then in effect;

c.   direct Trustee to foreclose this lien, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code as then in effect; and

d.   purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

C.8.   Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

D.   **Trustee's Rights and Duties**

If directed by Lender to foreclose this lien, Trustee will-

D.1.   either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

D.2.   sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Prior Lien and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

D.3.   from the proceeds of the sale, pay, in this order-

a.   expenses of foreclosure, including a reasonable commission to Trustee;

b.   to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

-5-

53

   c.  any amounts required by law to be paid before payment to Grantor; and

   d.  to Grantor, any balance; and

 D.4. be indemnified, held harmless, and defended by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity.

### E. General Provisions

 E.1. If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

 E.2. Recitals in any trustee's deed conveying the Property will be presumed to be true.

 E.3. Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

 E.4. This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

 E.5. If any portion of the Obligation cannot be lawfully secured by this deed of trust, payments will be applied first to discharge that portion.

 E.6. Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

 E.7. Grantor collaterally assigns to Lender all present and future rent from the Property and its proceeds. Grantor warrants the validity and enforceability of the

-6-

54

assignment. Grantor will apply all rent to payment of the Obligation and performance of this deed of trust, but if the rent exceeds the amount due with respect to the Obligation and the deed of trust, Grantor may retain the excess. If a default exists in payment of the Obligation or performance of this deed of trust, Lender may exercise Lender's rights with respect to rent under the Texas Property Code as then in effect. Lender neither has nor assumes any obligations as lessor or landlord with respect to any occupant of the Property. Lender may exercise Lender's rights and remedies under this paragraph without taking possession of the Property. Lender will apply all rent collected under this paragraph as required by the Texas Property Code as then in effect. Lender is not required to act under this paragraph, and acting under this paragraph does not waive any of Lender's other rights or remedies.

E.8.   Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt.

E.9.   In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

E.10.  When the context requires, singular nouns and pronouns include the plural.

E.11.  The term Note includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

E.12.  Grantor agrees to make an initial deposit in a reasonable amount to be determined by Lender and then make monthly payments to a fund for taxes and insurance premiums on the Property. Monthly payments will be made on the payment dates specified in the Note, and each payment will be one-twelfth of the amount that Lender estimates will be required annually for payment of taxes and insurance premiums. The fund will accrue no interest, and Lender will hold it without bond in escrow and use it to pay the taxes and insurance premiums. If Grantor has complied with the requirements of this paragraph, Lender must pay taxes before delinquency. Grantor agrees to make additional deposits on demand if the fund is ever insufficient for its purpose. If an excess accumulates in the fund, Lender may either credit it to future monthly deposits until the excess is exhausted or refund it to Grantor. When Grantor

-7-

makes the final payment on the Note, Lender will credit to that payment the whole amount then in the fund or, at Lender's option, refund it after the Note is paid. If this deed of trust is foreclosed, any balance in the fund over that needed to pay taxes, including taxes accruing but not yet payable, and to pay insurance premiums will be paid under part C, "Trustee's Rights and Duties." If the Property is transferred, any balance then in the fund will still be subject to the provisions of this paragraph and will inure to the benefit of the transferee. Deposits to the fund described in this paragraph are in addition to the monthly payments provided for in the Note.

E.13. If the Property is transferred by foreclosure, the transferee will acquire title to all insurance policies on the Property, including all paid but unearned premiums.

E.14. GRANTOR MAY FURNISH ANY INSURANCE REQUIRED BY THIS DEED OF TRUST EITHER THROUGH EXISTING POLICIES OWNED OR CONTROLLED BY GRANTOR OR THROUGH EQUIVALENT COVERAGE FROM ANY INSURANCE COMPANY AUTHORIZED TO TRANSACT BUSINESS IN TEXAS.

E.15. If Grantor transfers any part of the Property without Lender's prior written consent, Lender may declare the Obligation immediately payable and invoke any remedies provided in this deed of trust for default. If the Property is residential real property containing fewer than five dwelling units or a residential manufactured home, this provision does not apply to (a) a subordinate lien or encumbrance that does not transfer rights of occupancy of the Property; (b) creation of a purchase-money security interest for household appliances; (c) transfer by devise, descent, or operation of law on the death of a co-Grantor; (d) grant of a leasehold interest of three years or less without an option to purchase; (e) transfer to a spouse or children of Grantor or between co-Grantors; (f) transfer to a relative of Grantor on Grantor's death; (g) a transfer resulting from a decree of a dissolution of marriage, a legal separation agreement, or an incidental property settlement agreement by which the spouse of Grantor becomes an owner of the Property; or (h) transfer to an inter vivos trust in which Grantor is and remains a beneficiary and occupant of the Property.

E.16. This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

E.17. If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

E.18. Grantor and each surety, endorser, and guarantor of the Obligation waive, to the extent permitted by law, all (a) demand for payment, (b) presentation for payment, (c) notice of intention to accelerate maturity, (d) notice of acceleration of maturity, (e) protest, (f) notice of protest and (g) rights under sections 51.003, 51.004, and 51.005 of the Texas Property Code.

–8–

E.19. Grantor will have full recourse liability for repayment of the principal and interest of the Note and the performance of all covenants and agreements of Grantor in this Deed of Trust.

E.20. Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if this deed of trust is placed in the hands of an attorney for enforcement.

E.21. If any provision of this deed of trust is determined to be invalid or unenforceable, the validity or enforceability of any other provision will not be affected.

E.22. The term Lender includes any mortgage servicer for Lender.

E.23. Grantor represents that this deed of trust and the Note are given for the following purposes:

The debt evidenced by the Note represents cash advanced to Borrower at Borrower's request and which Borrower acknowledges receiving.

THE WRITTEN "LOAN AGREEMENTS" (AS HEREINAFTER DEFINED) REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

The term "Loan Agreements" as used above includes the following documents of even date herewith: Promissory Note and Deed of Trust, together with all other written promises, agreements, undertakings, commitments or other documents, or any combination of those actions or documents that borrower may have signed or received with respect to the loan from the financial institution evidence by the Note; but the term "Loan Agreements" expressly excludes any promissory note, agreement, undertaking, document or commitment relating to (a) a credit card or charge card; (b) an open-end account (as defined in Article 5069-1.01, Vernon's Texas Civil Statues) intended or used primarily for personal, family or household use.

Justin Tarrant

-9-

57

STATE OF TEXAS                )

COUNTY OF ANDERSON            )

This instrument was acknowledged before me on the _11_ day of November, 2014 by Justin Tarrant.

_Dorothy Harris_
Notary Public, State of Texas
My commission expires: _____

DOROTHY HARRIS
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 10-31-2016

AFTER RECORDING RETURN TO:

Law Office of Terry M. Thorn
608 E. Crawford Street
Palestine, TX 75801

--10--

58

TRACT ONE

All that certain lot, tract, or parcel of land situated in Henderson County, Texas, on the Thomas Chaffin League, A-4 and being a part of the 104.00 acre Tract One conveyed to Sallie Costlow by Edna Lee Owens et al by deed dated September 3, 1976 and recorded in Volume 795, Page 737 of the Henderson County Deed Records. Said Lot, tract, or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at a 1/2' iron rod set at the occupied Southeast corner of the 104.00 acre tract, the West line of the D.J. Tarrant 134.00 acre tract recorded in Volume 1452, Page 256 of Real Property Records of Henderson County and Northeast Corner of the Glen S. Van Noy 104.00 acre tract recorded in Volume 1412, Page 210;

THENCE South 86 Degrees 59 minutes West, along fence, 1849.10 feet to a 1/2' iron rod set for the Southwest corner of the Costlow 104.00 acre tract, in the East line of the D. J. Tarrant 55.499 acre tract recorded in Volume 1264, Page 633 of the Henderson

County Deed Records; WITNESS:    16' Forked Elm South 50 degrees East 6.0 feet;

THENCE North 0 degrees 35 minutes 37 seconds West, along the East line of the 55.499 acre tract, 1873.45 feet to a 1/2' iron rod set at the Southwest corner of the Eva Merle Richardson 26.97 acre tract surveyed this date and being South 0 degrees 35 minutes and 37 seconds East 50.00 feet from the Northeast corner of the 55.499 acre tract;
THENCE  North 86 degrees 50 minutes 20 second East 1847.58 feet to a 1/2' iron rod set in the East line of the 104.00 acre tract, South 0 degrees 41 minutes 30 seconds East 592.10 feet from its Northeast Corner; WITNESS:  30' Post Oak South 45 degrees West 6.2 feet, 8' Post Oak South 65 degrees West 39.0 feet;

THENCE South 0 degrees 41 minutes 30 second East 1942.55 feet to the place of beginning and containing 80.92 acres of land.

Including a 15' wide road easement further described as follows:

All that certain lot, tract, or parcel of land situated in Henderson County, Texas, on the Felix Parks Survey, A-647 and the C. L. Owens Survey, A-1182 and being the East 15.00 foot of the 55.499 acre tract conveyed to D. J. Tarrant by Harold James Smith and wife Marta Kay Smith by deed dated January 25, 1989 and recorded in Volume 1264, Page 633 of the Henderson County Deed Records. Sid lot, tract, or parcel of land being more particularly described by metes and bounds as follows:

BEGINNING at a 1/2' iron rod found at the Northeast corner of the 55.499 acre tract and the Northeast corner of the C. L. Owens Survey, in the West line of the Eva Merle Richardson 26.97 acre tract surveyed this date'

THENCE SOUTH 0 degrees 35 minutes 37 seconds East, at 50.00 feet pass the Southwest Corner of the 26.97 acre tract and in all 3990.73 feet to a 1/2' iron rod found at the Southeast Corner of the 55.499 acre tract, in the East margin of County Road 4224;

EXHIBIT "A" CONTINUED

THENCE SOUTH 89 degrees 44 minutes West 15.00 feet to a 1/2" iron rod set in County Road 4244;

THENCE NORTH 0 degrees 35 minutes 37 seconds West 3990.73 feet to a 1/2" iron rod set in the North line of the 55.499 acre tract;

THENCE NORTH 89 degrees 44 minutes East 15.00 feet to the place beginning and containing 1.37 acres of land.

TRACT TWO

All that certain lot, tract or parcel of land situated in the C. L. Owens Survey Abstract 1162, the Estevan Cazenova Survey Abstract 129 and the Felix Parks Survey Abstract 647, Henderson County, Texas and being a portion of a certain called 85.9 acre tract described as First Tract and a portion of a certain 12.1 acre tract described as Second Tract and all of a certain called 2 acre tract described as Third Tract in deed from Foy H. Owens, et ux to Harold J. Smith, et ux, recorded in Volume 927 Page 619 of the Deed Records of Henderson County. Said tract or parcel of land being more particularly described by metes and bounds as follows:

Beginning at a 1/2" I.R. found for the original Northwest corner of the C.L. Owens Survey and the most Southern Southwest corner of the William W. Hawkins Survey Abstract 347, and in the East line of the Estevan Cazenova Survey, Witness: A 24" Post Oak Stump bears N73 degrees 58'E 38.3 feet and a 16" Elm Stump bears N75 degrees 29'E 34.6 feet;

THENCE: N89 degrees 44'28"E with the North line of the C.L. Owens tract, the same being the South line of a 24.354 acre tract recorded in Volume 681 Page 690 of the Deed Records of Henderson County, 1680.28 feet to a 1/2" I. R. set for the Northeast corner to the C.L. Owens Survey, the same being the most Southern Southeast corner of the William W. Hawkins Survey and in the occupied West Line of the Thomas Chaffin Survey;

THENCE: S00 degrees 35'37"E with the occupied West line of the Thomas Chaffin Survey, the same being the East line of the C. L. Owens Survey and the East line of the Felix Parks Survey at 2247.61 feet passing the Southeast corner of the C. L. Owens Survey for a total distance of 3990.73 feet to a 1/2" I. R. found for the Southeast corner of this tract;

THENCE: S89 degrees 43'55"W 37.50 feet for the most Southern Southwest corner of this tract;

THENCE: N00 degrees 35'37"W 2645.75 feet being 37.5 feet parrallel to the West line of the Thomas Chaffin Survey to a 1/2" I. R. set for the Northeast corner of a 10 acre tract

THENCE: S89 degrees 43'55"W, 1442.53 feet with the center line of a present public road and being in the Northeast line of a 2.154 acre tract described in Volume 681 Page 690 of the Deed Records of Henderson County. Witness: A 1/2" I. R. bears N89 degrees 43'55"E16.36 feet;

EXHIBIT "A" CONTINUED

THENCE:  N35 degrees 17'21"W 351.76 feet with the center line of said public road to the South corner of Third tract called 2 acres and being in the West line of the C. L. Owens Survey and the East line of the Estevan Cazenova Survey.

THENCE:  N35 degrees 30'50"W 341.89 feet continuing with the said center line of public road to an angle in said road.

THENCE:  N32 degrees 57'36"W 266.13 feet continuing with the said center line of public road to the Northwest corner of the above mentioned 2 acre tract. Witness: A 1/2" I. R. bears N89 degrees 43'55"E 25.00 feet

THENCE:  N88 degrees 43'55"E 338.18 feet with the North line of said 2 acre tract to a 1/2" I. R. set in the East line of the E. Cazenova Survey and the West line of the C. L. Owens Survey

Harold J. Smith, 55.499 AC., Henderson Co., Owens A-1182, Cazenova A-129, Parks A-647

THENCE:  N00 degrees 35'37"W 553.97 feet with the West line of the Owens Survey to the place of beginning and containing 55.499 acres of land.

SAVE AND EXCEPT

a 2 acre tract or parcel of land, a part of the C. L. Owens Survey A-129, Henderson County, Texas, also a part of that as described as Third Tract recorded in Volume 1264 Page 633 of the Deed of Records of Henderson County, Texas and being more fully described by metes and bounds to wit in Exhibit "A" attached hereto and made a part hereof.

*TRACT THREE*

All that certain lot, tract or parcel of land, situated in Henderson County, State of Texas, in the W. W. HAWKINS SURVEY, Abstract No. 347; however, in some instruments filed for record with the County Clerk of Henderson County, Texas said tract is included in the C. L. Owens Survey, Abstract No. 1182, thru error. Said tract or parcel of land is more particularly described by metes and bounds as follows, to-wit:

BEGINNING at a 1/2 in. iron rod at the Northwest corner of the C. L. Owens Survey, Abstract No. 1182, Witness a 24 in. Post Oak Brs. North 73 Deg. 58 Min. East 38.30 feet, and in a 16 in. Elm Brs. North 75 deg. 29 Min. East 34.8 feet;

THENCE NORTH 00 Deg. 35 Min. 37 Sec. West, and along a fence, a distance of 631.23 feet to a 1/2 in. Iron Rod at the Northwest corner of this tract; said point being in the South Boundary Line of the Xenia Miller Tract or parcel of land;

THENCE North 89 Deg. 43 Min. 55 Sec. EAST, along a fence and the South Boundary Line of the said Xenia Miller tract, a distance of 1680.27 feet to a 3/8ths in. Iron Rod for the Northeast Corner of this tract, and a Southeast corner of the Xenia Miller tract;

EXHIBIT "A" CONTINUED

THENCE SOUTH 00 Deg. 35 Min. 37 Sec. East, along a fence, a distance of 631.50 feet to a 1/2 In. Iron Rod at the Northeast corner of the C. L. Owens Survey;

THENCE South 89 Deg. 44 Min. 28 Sec. WEST, along the North Boundary Line of the C. L. Owens Survey, a distance of 1880.28 feet to the place of BEGINNING, and containing 24.354 acres of land, more or less, and initially known as a 24.10 acre tract.

Said tract or parcel of land has been described in various instruments shown of record in the office of the County Clerk of Henderson County, Texas, as being the North portion of the C. L. Owens Survey, but in truth and in fact this tract or parcel of land is in the W. W. Hawkins Survey, Abstract No. 347.

EXHIBIT "A" CONTINUED



FILE COPY

---

## NOTICE OF SETTING

FILE COPY

IN RE: CAUSE NO: DCCV16-017-3                                DATE: November 07, 2016


DANIEL SCARBROUGH

vs.

ROGER TARRANT,DENISE TARRANT,JUSTIN TARRANT,D.A. TARRANT IRREVOCABLE TRUST


TAKE NOTICE that the above style and numbered cause has been set for FINAL on the 6th day of January, 2017 at 11:00 AM, IN THE ANDERSON COUNTY COURTHOUSE,  PALESTINE, TEXAS.


CC: Jeffrey Coe; Jim Echols

Janice Staples
District Clerk, Anderson County

By: _Becky Brewster,_
Deputy