# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00650-CV

**John Cox, Appellant**

**v.**

**Joy Cox, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
## NO. D-1-FM-08-000551, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N

This is a restricted appeal from a default judgment granting a final divorce decree between appellant John Cox and appellee Joy Cox.[1] John argues that there is error on the face of the record in that (1) he was not served with the first amended petition; (2) there was no agreement to the terms of the final divorce decree; and (3) the evidence was insufficient to support the trial court's orders regarding the division of the marital estate, custody and control of the couple's minor children, the spousal-maintenance award, and the award of attorney's fees. Joy contends that John does not meet the requirements of a restricted appeal because he participated in the proceedings below. In the alternative, Joy argues that there is no error on the face of the record, except as to the award of spousal maintenance. Having determined that John meets the requirements of a restricted appeal because he did not participate in the proceedings below and that there is

---

[1] Because the appellant and the appellee share the same surname, we will refer to the appellant as John and the appellee as Joy.

error on the face of the record in that John was not served with the first amended petition, we reverse the default judgment and remand the cause to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

John and Joy were married in 1983. They had five children, two of whom were minors at the time of the divorce. John and Joy separated in August 2007. On February 1, 2008, Joy filed a petition for divorce. A hearing on temporary orders was scheduled for April 21. John was personally served with citation and a copy of the petition on April 16.

John, Joy, and Joy's attorney signed a document entitled, "Negotiated Rule 11 Agreement for Temporary Orders" (the "written settlement agreement"), which was filed with the trial court on April 17, 2008. The document noted that:

> The parties agree to enter the attached Temporary Orders, attached as exhibit A, with the Court as their agreement for Final Agreement in Divorce . . . . The parties agree that the Decree in and of itself is a [sic] binding and not subject to revocation and it is in the best interest of their children and temporarily divides their assets and liabilities . . . . The parties have agreed, as evidenced by their signatures below, that this agreement is contractual and binding on the parties and they have agreed, by their signatures below that this is binding and not subject to revocation. **The Hearing scheduled for the week of April 21, 2008 shall be passed as this agreement is binding and made in good faith. The parties will work together to attempt to reach a Final Agreement and attempt to have a final agreement by May 15, 2008.**

The trial court entered the "Temporary Orders" attached to the written settlement agreement that same day. The orders included provisions regarding custody and support of the children, division of the marital estate, and spousal maintenance.

2

On July 23, 2008, the day of the default-judgment hearing, Joy filed her first amended original petition. The amended petition contained a certification from Joy's attorney that a copy of the petition was served on John at "5420 Bee Caves Rd., Austin, Texas." *See* Tex. R. Civ. P. 20, 21a. Joy and her attorney appeared on July 23; John did not. Joy testified in support of her petition, and referred to documentary evidence previously filed with the trial court regarding the value of the couple's community assets and liabilities. The trial court entered the final decree of divorce that day. The final decree included provisions not contained in the written settlement agreement regarding the division of certain marital property not listed in the written settlement agreement, possession of the children during school holidays, possession of the children should the parents ever reside more than 100 miles apart, and appellate attorney's fees. In addition, the final decree contained a modified spousal-maintenance award.

On September 11, fifty days after the decree was signed, John filed a motion for new trial, arguing that he had not been given notice of the trial setting. On September 26, John filed a motion to extend the post-judgment deadlines because he was not timely given notice of the final judgment. *See* Tex. R. Civ. P. 306a(4). After a hearing on October 22, the trial court denied both of John's motions, finding:

> To the extent Mr. Cox was entitled to Notice of the Trial setting, the Court finds that Mr. Cox received constructive notice of the trial setting in this matter and failed to appear at trial and wholly defaulted. To the extent Mr. Cox's appearance in the case via a Rule 11 Agreement and his agreement to the terms and substance of Temporary Orders does not constitute an answer because he failed to put any of the requests of Ms. Cox's Petition for Divorce in issue, Mr. Cox's failure to answer before judgment in this case was intentional, was the result of conscious indifference on his part and was NOT due to a mistake or an accident.

John then filed a notice of restricted appeal on November 17, 2008.

3

## STANDARD OF REVIEW

To prevail on a restricted appeal, an appellant must demonstrate: (1) the notice of restricted appeal was filed within six months of the date of the judgment or order; (2) he was a party to the suit; (3) he did not participate in the hearing that resulted in the judgment complained of and did not timely file a post-judgment motion or request for findings of facts and conclusions of law; and (4) error is apparent on the face of the record. *See* Tex. R. App. P. 30; *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004). The face of the record, for purposes of a restricted appeal, consists of all the papers that were before the trial court when it rendered its judgment. *See Alexander*, 134 S.W.3d at 848-49; *General Elec. Co. v. Falcon Ridge Apartments, Joint Venture*, 811 S.W.2d 942, 944 (Tex. 1991). These requirements are jurisdictional and cut off a party's right to seek relief by way of a restricted appeal if they are not met. *See Clopton v. Pak*, 66 S.W.3d 513, 515 (Tex. App.—Fort Worth 2001, pet. denied). The parties agree that John meets the first two elements; thus we focus our analysis on whether John has established that (a) he did not participate in the hearing resulting in the judgment and (b) error is apparent on the face of the record.

## DISCUSSION

### Did John Participate in the Hearing Below?

To determine whether John meets the non-participation requirement of a restricted appeal, we ask whether he took part in the decision-making event that resulted in the adjudication of his rights. *Texaco, Inc. v. Central Power & Light Co.*, 925 S.W.2d 586, 589 (Tex. 1996); *Parsons v. Dallas County*, 182 S.W.3d 451, 453 (Tex. App.—Dallas 2006, no pet.). The nature and extent of participation necessary to preclude a restricted appeal in any particular case is a matter of

4

degree because trial courts decide cases in a wide variety of procedural settings. *Texaco*, 925 S.W.2d at 589; *Parsons*, 182 S.W.3d at 453. It is the fact of non-participation, and not the reason for it, that determines a person's right to pursue a restricted appeal. *Texaco*, 925 S.W.2d at 589. Participation for purposes of a restricted appeal should be construed liberally in favor of a right to appeal. *Stubbs v. Stubbs*, 685 S.W.2d 643, 645 (Tex. 1985).

John contends that there are substantive differences between the written settlement agreement and the final decree and that those differences make the hearing where the final decree was proven up and entered the decision-making event. Joy responds that the settlement conference, in which John participated, was the actual decision-making event because the settlement agreement "was the basis for and is very similar to" the final divorce decree. We agree with John.

The decision-making event is the proceeding in which the questions of law and fact are decided. *Texaco*, 925 S.W.2d at 589 (citing *Lawyers Lloyds v. Webb*, 152 S.W.2d 1096, 1097-98 (Tex. 1941)). In a summary-judgment case, the decisions are made on the evidence presented to the trial court prior to the actual summary-judgment hearing; thus "a party who has taken part in all steps of a summary-judgment proceeding except the hearing on the motion has participated" in the decision-making event. *Id.*; *Thacker v. Thacker*, 496 S.W.2d 201, 204-05 (Tex. Civ. App.—Amarillo 1973, writ dism'd). But in a jury case, the decisions are made on the evidence presented to the jury, and thus a party must participate in the hearing before the jury in order to participate in the decision-making event. *Texaco*, 925 S.W.2d at 589. In a divorce case, it follows that the decision-making event is the event in which the final divorce decree is proven up. *See Barnett v. Barnett*, 750 S.W.2d 881, 883 (Tex. App.—Dallas 1988, no writ) (appellant participated

5

in decision-making event when present at hearing where terms of decree were proven up, but not at hearing where decree was entered); *cf. Texaco*, 925 S.W.2d at 591 (citing *Lawyers Lloyds*, 152 S.W.2d at 1098) (appellant who does not participate in hearing of evidence does not participate in decision-making event).

In this case, the terms of the final divorce decree were proven up at the July 23, 2008, default-judgment hearing. At the default-judgment hearing, Joy was required to present evidence of the value of the marital assets and liabilities to be divided, that the proposed division was equitable and just, that the custody orders were in the best interests of the children, and that she was eligible for spousal maintenance. *See* Tex. Fam. Code Ann. § 6.701 (West 2006) ("In a suit for divorce, the petition may not be taken as confessed if the respondent does not file an answer."); *Barry v. Barry*, 193 S.W.3d 72, 75 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (in divorce default-judgment hearing, petitioner must present evidence at trial of petition's material allegations). Because John did not participate in the default-judgment hearing, he did not hear this evidence and is therefore unfamiliar with the record. *Texaco*, 925 S.W.2d at 590-91 (citing *Lawyers Lloyds*, 152 S.W.2d at 1098) (purpose of restricted appeal is to allow appellant who did not participate in hearing evidence and is thus unfamiliar with the record more time to prepare for appeal). Therefore, we hold that the default-judgment hearing was the decision-making event for purposes of determining John's participation.

Joy next points to a line of cases in which our sister courts have held that the appellant participated in the decision-making event where the appellant, though not present at the hearing where the final decree was entered, signed or otherwise signaled his or her approval of the final decree prior to its entry by the trial court. *See Hammond v. Hammond*, 688 S.W.2d 690, 691-92

(Tex. App.—Beaumont 1985, writ dism'd) (appellant signed property settlement agreement and approved final divorce decree); *Blankinship v. Blankinship*, 572 S.W.2d 807, 808 (Tex. Civ. App.—Houston [14th Dist.] 1978, no writ) (appellant signed divorce decree prior to entry by trial court); *see also Seymour v. Seymour*, No. 14-07-00280-CV, 2009 Tex. App. LEXIS 1235, at *7 (Tex. App.—Houston [14th Dist.] Feb. 10, 2009, pet. filed) (mem. op.) (appellant did not sign divorce decree, but signed agreed motion to reinstate, which requested that trial court finalize decree that had been proven up at prior hearing); *Pierce v. Abbott*, No. 04-98-00150-CV, 1998 Tex. App. LEXIS 2452, at *3-4 (Tex. App.—San Antonio Apr. 22, 1998, no pet.) (not designated for publication) (appellant signed final divorce decree). Joy argues that the written settlement agreement was irrevocable and John therefore signaled his approval of the final divorce decree by signing the written settlement agreement.

John counters that because the final divorce decree contained substantive changes from the written settlement agreement, this case is more closely akin to the line of cases in which the appellant approved a preliminary order or agreement but did not approve the final decree or order at issue in the appeal. In those cases, the supreme court and our sister courts have held that the appellant did not participate in the decision-making event. *See Stubbs*, 685 S.W.2d at 646 (appellant signed revocable agreement incident to divorce); *McKnight v. Trogdon-McKnight*, 132 S.W.3d 126, 130 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (appellant participated in hearing resulting in final divorce decree, but did not participate in proceedings resulting in clarification order, amended qualified domestic relations orders, and stock division order at issue on appeal); *Campsey v. Campsey*, 111 S.W.3d 767, 771 (Tex. App.—Fort Worth 2003, no pet.) (appellant participated in TRO hearing governing conduct while divorce pending); *cf. Kisinger v. Kisinger*, 748 S.W.2d 2, 4

7

(Tex. App.—Houston [14th Dist.] 1987, no writ) (appellant signed order modifying custody agreement, but nothing in order stated that signature indicated approval or agreement).

Here again, we agree with John. The final divorce decree contains substantive differences from the written settlement agreement. It includes provisions for the division of marital property, for custody of the children, and for appellate attorney's fees, none of which were included in the written settlement agreement; it also includes a greater monthly amount of spousal maintenance. John could not, and did not, signal his approval of these terms by signing the written settlement agreement. We hold that John did not participate in the decision-making event by participating in the settlement negotiations and signing the settlement agreement where the final divorce decree is substantively different from the written settlement agreement. Because John meets the non-participation requirement of a restricted appeal, we next turn to the question of whether there is error apparent on the face of the record.

**Is Error Apparent on the Face of the Record?**

In his second issue, John contends that there is error on the face of the record because he was not served with the first amended petition. In determining whether there is error on the face of the record, we may only consider the evidence that was before the trial court when it rendered its final judgment.[2] *See Alexander*, 134 S.W.3d at 848-49; *General Elec. Co.*, 811 S.W.2d at 944.

---

[2] In their arguments to this Court, both John and Joy rely on the testimonial and documentary evidence presented to the trial court in the hearing on John's motion to extend post-judgment deadlines. However, because that evidence was not before the trial court when it rendered its final judgment, we do not consider it in this restricted appeal.

Upon a party's appearance, the Texas Rules of Civil Procedure require that copies of every pleading filed be served on all the parties. *See* Tex. R. Civ. P. 21. An amended pleading must be served on the other party "not less than three days before the time specified for the hearing unless otherwise provided by these rules or shortened by the court." *Id.*; *see also Davis v. Burnam*, 137 S.W.3d 325, 334-35 (Tex. App.—Austin 2004, no pet.). Under Rule 21a, the pleading must be served in person, by fax, or by certified or registered mail to the party's last known address. *See* Tex. R. Civ. P. 21a. A default judgment cannot stand if the defendant was not served, in a manner authorized by Rule 21a, with an amended pleading that requested more onerous relief than the original petition. *See In re E.A.*, 52 Tex. Sup. J. 833, 2009 Tex. LEXIS 322, at *12 (Tex. June 5, 2009); *Smith v. Smith*, 241 S.W.3d 904, 906-07 (Tex. App.—Beaumont 2007, no pet.); *In re R.D.C.*, 912 S.W.2d 854, 855-56 (Tex. App.—Eastland 1995, no writ). Joy has the burden of proving that John was served in strict compliance with the rules. *Smith*, 241 S.W.3d at 909.

The first question we address is whether John was served with the first amended petition in strict compliance with Rules 21 and 21a. The record reflects that Joy did not file her first amended petition until 8:10 a.m. on July 23, 2008, the morning of the default judgment hearing. The amended petition contained a certificate of service by Joy's attorney that stated: "I hereby certify by the signature above, that a true and correct copy of the above was served upon John Cox at 5420 Bee Caves Rd., Austin, Texas." *See* Tex. R. Civ. P. 21 ("The party or attorney of record shall certify to the court compliance with this rule in writing over signature on the filed pleading, plea, motion or application."). Joy did not certify or otherwise provide proof of the method or date of service. Therefore, we assume that John was served on the day the amended pleading was filed—the day of the default judgment hearing. Joy did not request leave of the court to file an amended

9

pleading on the day of the hearing or to shorten the three-day notice requirement. *See* Tex. R. Civ. P. 21 (requiring service at least three days before the hearing unless time shortened by court), 63 (requiring leave of the court before filing an amended pleading within seven days of date of trial); *Davis*, 137 S.W.3d at 334-35 (holding that trial court should not have ruled on merits of claim in amended petition filed one day before trial). Furthermore, the last known address for John, as provided in the written settlement agreement, was "5324 Bee Caves Road, Austin, Texas 78746." The certification, however, states that John was served at "5420 Bee Caves Rd., Austin, Texas"—the address of the marital residence, which was awarded to Joy in the temporary orders signed by the court on April 17, 2008. On this record, we must hold that John was not served with the first amended petition in strict compliance with the rules of civil procedure.

The second question we must address is whether the first amended petition requested more onerous relief. John argues that the amended petition requests more onerous relief because it requests several permanent injunctions, whereas the original injunction requested only temporary injunctions, and because it requested additional temporary and permanent injunctions barring John from "being on the computer or having the computer on, while the children are in his possession" and "discussing this litigation or any future litigation with the children or within hearing of the children."

A permanent injunction is, by its very nature, more onerous than a temporary injunction. Nonetheless, Joy claims that the amended petition is not more onerous because the additional injunctive relief sought in the amended petition is "virtually identical" to the injunctive relief included in the temporary orders John agreed to as part of the written settlement agreement. Because the question presented is whether the amended petition is more onerous than the

10

original petition, not whether it was more onerous than the written settlement agreement, we assume that Joy is essentially claiming that the written settlement agreement gave John constructive notice that she would be seeking the more onerous relief.

Assuming arguendo that constructive notice of a more onerous petition can substitute for notice in compliance with Rule 21a, we hold that the written settlement agreement did not clearly notify John that Joy would be seeking such relief permanently.[3] Joy cites to language in the decree stating that the "parties understand that this agreement is binding upon the signature of the parties and is not subject to revocation." However, the duration of the agreement is not as clear as the selected language would seem to indicate. First, we note that the document is entitled "Negotiated Rule 11 Agreement for Temporary Orders." While Joy correctly notes that we give greater weight to the operative clauses of a contract than the captions or titles, *see Enterprise Leasing Co. v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004), the relevant operative clauses in the written settlement agreement also contain indicators that the injunctive relief requested would last only until the parties agreed to, and the trial court entered, a final divorce decree. The written settlement agreement continually refers to the attached orders as "Temporary Orders." The opening paragraph of the written settlement agreement notes, "The parties will work together to attempt to reach a Final Agreement and attempt to have [a] final agreement by May 15, 2008." The section containing the injunctive relief is under the heading "Temporary Injunctions as to Persons." It then vacillates between referring to the requested injunctions as temporary and permanent:

---

[3] The supreme court recently noted, "We have never decided whether constructive notice of a more onerous amended petition satisfied due process." *See In re E.A.*, 52 Tex. Sup. J. 833, 2009 Tex. LEXIS 322, at *12 (Tex. June 5, 2009).

11

The Court finds that the parties have agreed to the following *permanent injunction*.

The *temporary injunction* granted below shall be effective immediately and shall be binding on John Cox and Joy Cox; on their agents, servants, employees, and attorneys; and on those persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise.

IT IS ORDERED AND DECREED that John Cox or Joy Cox is *permanently enjoined* from: . . . .[4]

(Emphases added.)  The final clause of the written settlement agreement states, "These Temporary Orders shall continue in force until the signing of the Final Decree of Divorce or until further order of this Court."   The vacillation between the terms "temporary" and "permanent," and the juxtaposition of references to an "irrevocable and binding agreement" with the statement that the parties will continue to work toward a final agreement, make the document entirely ambiguous and confusing.  Given the burden on Joy to prove "strict compliance" with the rules of service, we cannot say that an ambiguously drafted written settlement agreement is enough to give John constructive notice such that Joy did not have to serve him in accordance with Rule 21a.

Because John was not properly served with a more onerous amended petition, there is error on the face of the record and the default judgment cannot stand.  *See In re E.A.*, 52 Tex. Sup. J. 833, 2009 Tex. LEXIS 322, at *12; *Weaver v. Hartford Accident & Indem. Co.*, 570 S.W.2d 367, 370 (Tex. 1978); *Smith*, 241 S.W.2d at 909-10; *Caprock Constr. Co. v. Guaranteed Floorcovering, Inc.*, 950 S.W.2d 203, 204-05 (Tex. App.—Dallas 1997, no writ).  We sustain John's second issue on

---

[4]  We also note that the written settlement agreement enjoins both John and Joy from most of the behavior, whereas the amended petition and the final divorce decree enjoins only John.

appeal.  Because of our disposition of this point, it is not necessary to reach John's claims regarding the sufficiency of the evidence to support certain terms of the decree.  *See* Tex. R. App. P. 47.1.

## CONCLUSION

We reverse the default judgment entering the final divorce decree and remand the cause to the trial court for further proceedings.  We also reinstate the temporary orders entered by the trial court on April 17, 2008.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Reversed and Remanded

Filed:   August 28, 2009