# NO. 12-22-00135-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE MATTER OF THE* | § | *APPEAL FROM THE 307TH* |
| *MARRIAGE OF L.B. AND L.C.B.* | | |
| *AND IN THE INTEREST OF J.C.B.,* | § | *JUDICIAL DISTRICT COURT* |
| *A CHILD* | § | *GREGG COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Leola Bradley brings a restricted appeal from the default judgment in a suit for divorce and child custody. Leola argues there is error on the face of the record in that (1) the evidence is insufficient to rebut the presumption that a standard possession order is in the best interest of the child; and (2) the trial court erred in granting the marital residence to Louis Bradley without recognizing the community enhancement to the residence. We affirm.

## BACKGROUND

Louis filed his petition for divorce from Leola on July 18, 2019. Louis requested a temporary injunction prohibiting Leola from engaging in certain activities related to communications between the parties, custody of their only child, J.C.B., and actions related to their separate and marital estates. In his petition, Louis asked to be appointed sole managing conservator (SMC) of J.C.B. and that Leola pay Louis support for J.C.B. Alternatively, Louis asked that if the court appointed Leola as a joint managing conservator (JMC), that the court order her possession periods be supervised, that she refrain from using drugs and alcohol during her periods of possession, and exchange of J.C.B. occur in a protective setting.

Leola filed a counter-petition on July 22. She asked the court to appoint her JMC with the right to designate J.C.B.'s primary residence, and that Louis be appointed a JMC and ordered

1

to pay support for J.C.B. Leola requested a temporary injunction prohibiting Louis from engaging in certain activities regarding communications between the parties, custody of J.C.B., and actions related to their separate and marital estates.

On July 23, the trial court signed a temporary restraining order prohibiting Leola from threatening Louis or J.C.B., causing bodily injury to Louis or J.C.B., hiding or secreting J.C.B. from Louis, and other actions related to their community and marital estates. On August 1, the parties entered a Rule 11 agreement for temporary orders which provided that Louis and Leola be named JMCs of J.C.B and that Leola would have the right to designate J.C.B.'s primary residence in Gregg County, Texas or Harrison County, Texas and receive the exclusive right to child support. The orders granted Louis possession and access to J.C.B. pursuant to an extended standard possession order. The orders stated Louis would have exclusive use and possession of the marital home at 200 Hiawatha, Longview, Texas and that Leola would have the right to go to the home on August 10 to retrieve her personal belongings. On August 16, Leola filed a motion to modify the temporary orders alleging that when she went to pick up her possessions on August 10, she discovered her personal belongings were gone or scattered outside of a storage building on the property. Leola alleged that Louis's children from another relationship went through her belongings and sold many of them. On August 22, the parties appeared before the trial court and the trial court signed an order for Leola to go to the residence on August 24 to remove her personal belongings. The trial court imposed certain conditions regarding the parties' behavior during this time period.

On November 5, Leola's attorney filed a motion to withdraw as Leola's counsel, alleging that she could not effectively communicate with Leola in a manner consistent with good attorney-client relations. Leola's attorney indicated in her motion that she notified Leola of her motion and included instructions on how to proceed if Leola wished to disagree with the motion. On November 14, the trial court held a hearing on the motion to withdraw and found that good cause existed for Leola's attorney to withdraw. The trial court granted the motion and ordered that the attorney be allowed to withdraw as Leola's counsel of record. The trial court further ordered that all notices in the case be either delivered to Leola in person or sent to her last known address by first class and certified mail, as well as by email. The trial court ordered Leola's

2

former attorney to notify Leola in writing of any additional settings or deadlines of which her attorney had current knowledge.[1]

On March 20, 2020, the trial court entered formal temporary orders in conformity with the Rule 11 agreement signed by the parties on August 1, 2019. On August 5, 2021, the trial court sent notice to Louis, through his attorney of record, and Leola, by mail to her last known address, that the case had been pending for over a year with no action and would be dismissed if neither party filed a motion to retain on or before September 17. On August 26, Louis filed a motion to retain the case on the trial court's docket. This motion was served through e-filing to Leola's former attorney, but there is no indication in the record that it was sent to Leola. On September 13, the trial court granted Louis's motion to retain the case and set it for a final hearing on January 12, 2022. This notice was sent to Leola through e-filing to Leola's email address.

On January 12, the trial court held the final hearing in the case. Louis appeared with his attorney, but Leola did not appear. Louis testified at the final hearing that he and Leola married on July 29, 2006 and had one child together, J.C.B., born in July of 2008. Louis testified that he and Leola stopped living together as a married couple on June 1, 2019 when Leola left the marital residence and left J.C.B. in Louis's care.

Louis testified that he has been J.C.B.'s primary caretaker for most of J.C.B's life. He ensured J.C.B. was ready for school each day, took him to and picked him up from school, and took J.C.B. to various extracurricular activities and to church. Louis testified that Leola spent extended periods of time lying in bed and took excessive amounts of prescription medication. Louis offered pictures of Leola's medications, which were admitted into evidence, which depict various bottles of psychotropic medications, including Amitriptyline, Sertraline, Tizanidine, and Clonazepam prescribed to Leola. Louis expressed concern that Leola took excessive amounts of prescription medication and seemed "completely out of it" at times. After Leola left in June 2019, Louis discovered various bottles of alcohol hidden around the home.

Louis testified that after Leola left in June, she returned a few weeks later, took J.C.B. by force, and left the home again, which prompted Louis to hire an attorney, file for divorce, and seek temporary orders. Louis testified that Leola concealed J.C.B. from that date until the

---

[1] In her motion to withdraw, Leola's attorney reported that no discovery requests had been served by either Leola or Louis.

temporary orders were agreed to on August 1, 2019. Louis was unable to see J.C.B. on J.C.B.'s birthday in 2019 because Leola would not allow Louis to see J.C.B. Louis testified that after the temporary orders hearing in August 2019, Leola exercised visitation with J.C.B. for approximately a month and then essentially abandoned J.C.B. to Louis. As of January 12, 2022, Leola had possession of J.C.B. overnight three times and spoke with J.C.B. twice a month since approximately September 2019. Louis testified that Leola did not financially support J.C.B. during this time and took approximately $27,000.00 in J.C.B.'s social security benefits, in contravention of the temporary orders which required her to pay Louis $250.00 from J.C.B's benefits each month, with the remaining balance designated as Louis' child support payment to Leola. Louis testified that he solely financially supported J.C.B. since Leola abandoned J.C.B.

Louis testified that after Leola moved out of the house, she sold a good deal of the community property from the marital estate and kept the proceeds from the sale. Louis explained that Leola came to his home and retrieved her personal belongings. He offered photographs, which were admitted into evidence, that depict her closet containing her personal belongings, which Louis testified she retrieved. Louis testified that the marital home located at 200 Hiawatha was purchased prior to his marriage to Leola from his deceased former wife, Eva Bradley. Louis offered, and the trial court admitted, a warranty deed for the property from Eva to Louis, signed in February 2006. Louis also offered, and the trial court admitted, a print-off from the Gregg County Appraisal District with the same legal description found in the warranty deed. Louis asked the court to award the home and $84,320.05 in debt on the property to Louis, as his separate property.

Louis testified that he speaks with Leola approximately once or twice a month when she calls to speak with J.C.B. He testified that she is living in Marshall, Texas, but was unsure of her home address. Louis asked the court to award her "whatever residence that she's in with any associated debt." Louis testified that the funds she already received, including J.C.B.'s social security benefits, proceeds from the sale of the community estate, and the benefit of not paying any support for J.C.B. more than compensate her for any interest that she may have in any other community property the two own. Louis asked that each party be awarded the property in their possession and subject to their own control. He further asked the court to list him as the payee on J.C.B.'s social security benefits.

4

Additionally, Louis testified that J.C.B. is healthy and happy, attends school and church, and plays football. Louis asked to have the exclusive right to: child support, enroll J.C.B. in school, and claim J.C.B. as a dependent for tax purposes. Louis testified that he would agree that Leola should have possession of J.C.B. at all times mutually agreed upon between himself and Leola, and if a time could not be agreed upon, then Leola should have possession of J.C.B. from Friday at 6:00 p.m. to Saturday at 6:00 p.m. on the first, third, and fifth weekends of the month. Louis explained that he takes J.C.B. to church every Sunday, which is why he wanted Leola to return J.C.B. on Saturday evenings.

After hearing evidence from Louis, the trial court granted a default judgment and signed a final decree of divorce on January 27, ordering that Louis and Leola be appointed JMCs of J.C.B. and that Louis have the exclusive right to designate the primary residence of J.C.B. in Gregg County or a county contiguous to Gregg County. The final decree further mandated that Leola pay Louis child support at a rate of $400 per month. The trial court entered a custom possession order for Leola, which provided that she would have possession of J.C.B. on the first, third, and fifth weekends of the month from Friday at 6:00 p.m. until the following Saturday at 6:00 p.m., as well as on J.C.B.'s birthday for two hours, and on Mother's Day. The trial court awarded Louis the residence at 200 Hiawatha, along with debt owed on the property, as Louis's separate property. This restricted appeal followed.

## RESTRICTED APPEAL

Leola argues that she is entitled to a restricted appeal because she filed a notice of restricted appeal on June 8, 2022,[2] within six months of the trial court's final decree entered on January 27, 2022, she was a party to the underlying lawsuit, she did not participate in the final hearing that resulted in the final decree of divorce, she did not file any post-judgment motions, and there is reversible error on the face of the record. Louis concedes that Leola filed her notice of appeal within six months of the judgment, was a party to the underlying lawsuit and did not file any post judgment motions. Louis argues that Leola did participate in the lawsuit despite not appearing for the final hearing and is thus barred from bringing a restricted appeal. Alternatively, Louis argues there is no reversible error on the face of the record.

---

[2] Leola filed an amended notice of restricted appeal on June 8 because her first notice of restricted appeal filed May 31 was defective.

**Analysis**

A restricted appeal is a direct attack on a judgment. *Roventini v. Ocular Scis., Inc.*, 111 S.W.3d 719, 721 (Tex. App.—Houston [1st Dist.] 2003, no pet.). To be entitled to a restricted appeal, an appellant must show that: (1) he filed notice of restricted appeal within six months after the complained-of judgment was signed; (2) he was a party to the underlying lawsuit; (3) he did not participate in the hearing that resulted in the complained of judgment and did not timely file any post-judgment motion or request for findings of fact and conclusions of law; and (4) error is apparent on the face of the record. *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004); *Lewis v. Aguirre*, No. 01-17-00063-CV, 2018 WL 4868668, at *2 (Tex. App.—Houston [1st Dist.] Oct. 9, 2018, no pet.) (mem. op.); *see* TEX. R. APP. P. 26.1(a), 30. These requirements are jurisdictional; if they are not met, an appellant has no right to relief by way of a restricted appeal. *See Lewis*, 2018 WL 4868668, at *2–3; *Cox v. Cox*, 298 S.W.3d 726, 730 (Tex. App.—Austin 2009, no pet.).

*Lack of Participation*

We first consider whether Leola satisfied the non-participation requirement for a restricted appeal. Lack of participation in the hearing that resulted in the complained of judgment is a jurisdictional requirement for appellate review by restricted appeal. *In re B.H.B.*, 336 S.W.3d 303, 305 (Tex. App.—San Antonio 2010, pet. denied) *see also Lewis*, 2018 WL 4868668, at *2–3; *Cox*, 298 S.W.3d at 730. To determine whether Leola meets this requirement, we consider whether she took part in the decision-making event that resulted in the adjudication of her rights. *Texaco, Inc. v. Cent. Power & Light Co.*, 925 S.W.2d 586, 589–90 (Tex. 1996); *Cox*, 298 S.W.3d at 730. The nature and extent of participation necessary to preclude a restricted appeal in any particular case is a matter of degree because trial courts decide cases in a wide variety of procedural settings. *Texaco*, 925 S.W.2d at 589; *Cox*, 298 S.W.3d at 730. An appellant's failure to attend the trial on the merits or hearing that resulted in the complained of judgment does not prevent him from being deemed to have taken part in the decision-making event. *In re Marriage of Butts*, 444 S.W.3d 147, 150 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Cox*, 298 S.W.3d at 731–32 (collecting cases holding appellant participated in decision making event where appellant, though not present at hearing where final divorce decree entered, signaled appellant's approval of final decree before its entry by trial court); *see, e.g., Seymour v. Seymour,* No. 14-07-00280-CV, 2009 WL 442259, at *2–4 (Tex. App.—Houston [14th Dist.]

6

Feb. 10, 2009, pet. denied) (mem. op.) (appellant, who was absent from hearing wherein final divorce decree proven up, still participated sufficiently to prevent him from pursuing restricted appeal).

We note that in determining whether an appellant's participation rises to the level of participation that would preclude a restricted appeal, courts have held that a waiver of service or an appellant's statement that he has made a general appearance for all purposes in a proceeding does not constitute enough participation to prevent him from pursuing a restricted appeal. *See* ***B.H.B.***, 336 S.W.3d at 305; ***Seymour***, 2009 WL 442259, at *2; ***Campsey v. Campsey***, 111 S.W.3d 767, 770–71 (Tex. App.—Fort Worth 2003, no pet.) (rejecting argument that appellant participated in proceedings because "he stated in his waiver of service that he made an appearance for all purposes"). Yet, an appellant who waives citation and the making of a statement of facts or record and who indicates his approval of a judgment by signing it before its entry has participated enough to preclude him from pursuing a restricted appeal. *See* ***B.H.B.***, 336 S.W.3d at 305; ***Blankinship v. Blankinship***, 572 S.W.2d 807–08 (Tex. App.—Houston [14th Dist.] 1987, no writ) (where appellant signed waiver of citation, indicating that he was entering appearance for all purposes, waived making of record, and "indicated his approval of the divorce decree by signing the judgment prior to its entry by the trial court," he had "participated in the proceedings in an extent sufficient to preclude him" from pursuing restricted appeal) (internal quotations omitted).

It is the fact of non-participation, and not the reason for it, that determines a person's right to pursue a restricted appeal. ***Cox***, 298 S.W.3d at 730. Here, Louis argues that Leola

> [T]ook no interest in her divorce proceedings after the second temporary orders hearing was held on August 22, 2019…[and] [a]lthough [Leola] did not attend the final hearing at which the divorce, conservatorship, and property division were ordered, [Leola] must be found to have participated in the proceedings through her affirmative pleadings as well as her participation, through counsel, in multiple temporary order hearings. [Leola] cannot now rely on her decision to not attend the January 12, 2022, hearing as means of support for her request for appellate review nearly six months after the Final Decree of Divorce was signed.

As the Texas Supreme Court noted in ***Texaco***, there is no equitable component to a restricted appeal. *See* 925 S.W.2d at 590 (holding no equitable component to appeal by writ of error, predecessor to restricted appeal, rather writ of error is but another mode of appeal). Thus, as in an ordinary appeal, the appellant is not required to show diligence or lack of negligence before

its complaints will be heard. *Id.* Therefore, we confine our consideration to whether Leola participated in the decision-making event that led to the adjudication of her rights. *Cox*, 298 S.W.3d at 730. The record makes it clear that she did not. While Leola did file an answer and sign a Rule 11 agreement for temporary orders, she neither appeared through counsel or in person for the final hearing, where the divorce decree was proven, which is the decision-making event in a divorce case. *Id.* at 731. Moreover, the divorce decree deviates from the Rule 11 agreement on temporary orders, and nothing in the record shows that Leola agreed to the final decree, which several courts have held qualifies as participation for purposes of a restricted appeal in a divorce case. *Cf.* *Hammond v. Hammond*, 688 S.W.2d 690, 691–92 (Tex. App.—Beaumont 1985, writ dism'd) (appellant signed property settlement agreement and approved final divorce decree); *Blankinship*, 572 S.W.2d at 808 (appellant signed divorce decree prior to entry by trial court); *Seymour*, 2009 WL 442259, at *3 (appellant did not sign divorce decree, but signed agreed motion to reinstate, which requested that trial court finalize decree that had been proven up at prior hearing); *Pierce v. Abbott*, No. 04–98–00150–CV, 1998 WL 201583, at *1 (Tex. App.—San Antonio Apr. 22, 1998, no pet.) (per curiam) (op., not designated for publication) (appellant signed final divorce decree). Thus, we conclude that Leola has satisfied the non-participation element and we now decide if error exists on the face of the record.

### Error Apparent on the Face of the Record

#### a. Custom Possession Order

Leola argues that the trial court's custom possession order is not supported by sufficient evidence to rebut the presumption that standard possession is in the best interest of J.C.B. *See* Tex. Fam. Code Ann. §§ 153.251(a); 153.252(1), (2) (West 2014). Louis counters that the absence of proof to justify a deviation from the standard possession order is not error on the face of the record for purposes of a restricted appeal. *See* *Lynda's Boutique*, 134 S.W.3d at 849 (holding that failure of record to affirmatively show notice of pre-trial hearing was sent to counsel or notice of order dismissing case was sent to counsel is not error on face of record).

We disagree with Louis's assertion that Leola may not challenge the sufficiency of the evidence because it is not "error on the face of the record." A restricted appeal affords an appellant the same scope of review as an ordinary appeal, that is, a review of the entire case. *See* *Norman Commc'ns v. Tex. Eastman Co.*, 955 S.W.2d 269, 270 (Tex. 1997). For purposes of a restricted appeal, "the face of the record" refers to "all the papers on file in the appeal, including

8

the reporter's record." *In re Guardianship of V.A.*, 390 S.W.3d 414, 416 (Tex. App.—San Antonio 2012, pet. denied) (citing *Norman Commc'ns*, 955 S.W.2d at 270.) It necessarily follows that review of the entire case includes review of legal and factual sufficiency claims. *Norman Commnc'ns*, 955 S.W.2d at 270.

Louis argues in the alternative that the record contains sufficient evidence to support a conclusion that the trial court's deviation from the standard possession order is in the best interest of J.C.B. We note that the family code states there is a rebuttable presumption that standard possession provides reasonable minimum possession of a child for a parent named as a possessory conservator or a JMC and is in the best interest of the child. TEX. FAM. CODE ANN. § 153.252 (1), (2).

A trial court has broad discretion to fashion the terms of a decree related to custody, visitation, and possession. *Gadekar v. Zankar*, No. 12-16-00209-CV, 2018 WL 2440393, at \*6 (Tex. App.—Tyler May 31, 2018, no pet.) (mem. op.). We review a trial court's rulings on conservatorship and visitation under an abuse of discretion standard. *Id.* When determining issues related to conservatorship or possession of and access to the child, the best interest of the child is the primary consideration. *Id.*

In this case, the final decree gives possession of J.C.B.to Leola as follows:

(c) Possession Regardless of Distance

Except as otherwise expressly provided in this Custom Possession Order, [Leola] shall have the right to possession of the child as follows:

1. Weekends throughout the year −

On weekends beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 pm. on the following Saturday.

(d) Holidays Unaffected by Distance

Notwithstanding the weekend periods of possession of [Leola], [Louis and Leola] shall have the right to possession of the child as follows:

1. Child's Birthday - If a parent is not otherwise entitled under this Custom Possession Order to present possession of the child on the child's birthday, that parent shall have possession of the child beginning at 6:00 p.m. and ending at 8:00 p.m. on that same day, provided that that parent picks up the child from the other parent's residence and returns the child to that same place.

2. Father's Day – [Louis] shall have the right to possession of the child each year, beginning at 6:00 pm. on the Friday preceding Father's Day and ending at 6:00 p.m. on Father's Day, provided that if [Louis] is not otherwise entitled under this Custom Possession Order to present possession of the child.

3. Mother's Day – [Leola] shall have the right to possession of the child each year, beginning at 6:00 p.m. on the Friday preceding Mother's Day and ending at 6:00 p.m. on Mother's Day, provided that if [Leola] is not otherwise entitled under this Custom Possession Order to present possession of the child, she shall pick up the child from [Louis'] residence and return the child to that same place.

(e) Undesignated Periods of Possession

[Louis] shall have the right of possession of the child at all other times not specifically designated in this Custom Possession Order for [Leola].

Leola is correct that this deviates from the extended standard possession order which governed custody of J.C.B. when the temporary orders were in place. *See* TEX. FAM. CODE ANN. § 153.312 (West Supp. 2022) (parents who reside 100 miles or less apart).

Leola argues that the custom possession order, with regard to her periods of weekend possession, is supported by insufficient evidence because it is only supported by Louis's testimony that he takes J.C.B. to church every Sunday and "conflicts with the 'Moral and Religious' duties afforded to Leola pursuant to the Family Code." *See id.* § 153.074(3) (West 2014).[3] However, Leola does not provide any authority to support her contention that the custom possession order conflicts with Leola's moral and religious duties to J.C.B. *See* TEX. R. APP. P. 38.1 (i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Moreover, we note that the moral and religious duties afforded a parent conservator can be limited by court order and are therefore within the sound discretion of the trial court. *See* TEX. FAM. CODE ANN. § 153.074 ("Unless limited by court order a parent appointed as conservator of a child has the following rights and duties during the period that the parent has possession of the child..."). Further, just because the custom possession order does not afford Leola possession of J.C.B. on Sunday morning, a time when many families traditionally attend church, it does not necessarily result in her inability to provide J.C.B. with moral and religious training.

Leola further argues that the custom possession order does not allow her possession of J.C.B. during holidays, summer vacation, or spring break, and the trial court failed to consider

---

[3] Leola's brief cites to Section 153.074 (3) of the Texas Family Code, which provides that "Unless limited by court order, a parent appointed as a conservator of a child has the following rights and duties during the period that the parent has possession of the child...the right to consent for the child to medical and dental care not involving an invasive procedure." TEX. FAM. CODE ANN. § 153.074(3) (West 2014). We assume this was a clerical error and her brief intended to reference Section 153.074(4) which confers upon a conservator "the right to direct the moral and religious training of the child." *Id.* § 153.074(4).

the best interests of the child because at the close of testimony it asked Louis what grade J.C.B. was in and when the last time Leola saw J.C.B. in person. Leola argues:

> The Court however did not raise a question concerning that 'All parties participate in Counseling' which stated: IT IS ORDERED that [Child, Appellee, Appellant] shall attend counseling. IT IS Further ORDERED that Petitioner and Respondent shall ensure that the child is present at all appointments and shall each participate at the direction of the counselor [sic].
>
> The above dictate by the trial court goes directly a core factor reflecting the trial court concern for the 'Best Interest' of the Child however Appellee trial counsel fails to tender any question on this directive of the trial court and the trial court fails to address the factor. In indeed the "Best Interest" of the 12 old is the center of possession order the trial court fails to use the tools that places all parties in setting to best exercise the duty given to the trial court on this paramount question [sic].
>
> However the record reflects that the issue is based on innuendos of medication and junkie closets coupled with superficial question on what grade the child is in and when was the "last time Appellant 'put eyes on him actually'" all of which or arbitrarily or unreasonably, without reference to any guiding rules or principles [sic].
>
> Additionally nor does the evidence in the case at hand raise to level to rebut the 'Best Interest' presumption under Texas Family Code - FAM § 153.251 (a) afforded to Appellant as a 'Joint Managing Conservator' in the case at hand. The bench trial was on Wednesday January 12, 2022, Monday was January 10,2022 trial court ruling was an abused its discretion and it acts were arbitrarily or unreasonably, without reference to any guiding rules or principles [sic].

We construe this argument to mean that (1) the trial court abused its discretion by not ordering the parties to attend counseling, and (2) that Louis's evidence regarding Leola's use of prescription medications and alcohol and her abandonment of J.C.B. is insufficient to rebut the presumption that the standard possession order is in the best interest of the child.

As discussed earlier, a trial court has wide discretion in determining the best interest of a child and over custody, control, possession, support, and visitation matters, and we review a decision on these matters for an abuse of that discretion. *Interest of K.A.M.S.*, 583 S.W.3d 335, 340 (Tex. App.—Houston [14th Dist.] 2019, no pet.). The trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Id.* The trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support its decision. *Id.*

Under the abuse of discretion standard, legal and factual sufficiency are not independent grounds of error, but instead are relevant factors to determine if the trial court abuses its discretion. *Id*. When examining legal sufficiency, we review the entire record, considering evidence favorable to the finding if a reasonable factfinder could and disregarding contrary

11

evidence unless a reasonable factfinder could not. *Id.* We indulge every reasonable inference that would support the challenged finding. *Id.* Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id.* For a factual-sufficiency review, we examine the entire record and consider evidence favorable and contrary to the challenged finding. *Id.* We may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* In a bench trial, the trial court is in the best position to observe and assess the witnesses' demeanor and credibility, and "to sense the forces, powers, and influences that may not be apparent from merely reading the record on appeal." *Id.* (quoting *Taylor v. Meek*, 154 Tex. 305, 276 S.W.2d 787, 790 (1955); *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (internal quotation marks omitted). As a result, an appellate court defers to a trial court's resolution of underlying facts and to credibility determinations that may have affected its determination and will not substitute its judgment for that of the trial court. *K.A.M.S.*, 583 S.W.3d at 341.

The term "best interest" is a term of art encompassing a broad facts and circumstances evaluation that is accorded significant discretion. *See In re Lee*, 411 S.W.3d 445, 460 (Tex. 2013) (citing *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex. 1976)). In determining the best interest of a child, a trial court should consider (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *In Interest of D.M.*, 452 S.W.3d 462, 470 (Tex. App.—San Antonio 2014, no pet.) (citing *Holley,* 544 S.W.2d at 371–72). These factors are not exhaustive. *In the Interest of C.H.,* 89 S.W.3d 17, 27 (Tex. 2002). In analyzing these factors, we focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Protective & Regulatory Servs.,* 907 S.W.2d 81, 86 (Tex. App.–Dallas 1995, no writ).

We now turn to an evaluation of the evidence before the trial court at the time it made its determination. According to Louis, Leola was not the primary caretaker of J.C.B. prior to their separation, spent a lot of time "completely out of it," and used an inordinate amount of

prescription drugs and hid alcohol in the home. Louis testified that he was J.C.B.'s primary caretaker for most of J.C.B.'s life and ensured that J.C.B. attended school, participated in extracurricular activities, and attended church regularly. Additionally, after Leola separated from Louis, she forcibly removed J.C.B. for a short period of time and did not allow Louis, J.C.B.'s primary caregiver, to see J.C.B. on his 11th birthday. Moreover, after the temporary orders hearing in August of 2019, she essentially abandoned J.C.B. to Louis and had sparse in person contact and minimal phone contact with J.C.B. Additionally, she kept J.C.B.'s social security benefits to the tune of approximately $27,000.00, all while Louis had custody of J.C.B. and was the sole financial provider for J.C.B. Based upon this evidence, we cannot say that the trial court abused its discretion in deviating from the standard possession order, and we overrule Leola's first issue. *See* ***K.A.M.S.***, 583 S.W.3d at 344 (no abuse of discretion where trial court appointed mother sole managing conservator and modified father's possession and access where Father only parented children when in relationship with Mother, was largely absent from children's lives, with exception of intermittent and inconsistent phone and in person contact).

### b. Property Distribution

In Leola's second issue, she argues that the trial court abused its discretion by granting Louis the marital home without recognizing the community enhancement to Louis's separate property. Under Section 3.003 of the Texas Family Code, property possessed by either spouse during or upon dissolution of the marriage is presumed to be community property and the degree necessary to establish that property as separate is clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(a)-(b) (West 2006). The uncontroverted evidence in the record shows that Louis purchased 200 Hiawatha Street prior to his marriage to Leola, which Leola does not dispute on appeal. Leola concedes that the home is Louis's separate property and argues that she is entitled to reimbursement pursuant to Section 3.402 of the Texas Family Code. *See id.* § 3.402 (West Supp. 2022).

However, the party claiming the right of reimbursement has the burden of pleading and proving that the expenditures and improvements were made, and they are reimbursable. ***Matter of Marriage of Wells***, No. 12-21-00152-CV, 2022 WL 3724724, at *3 (Tex. App.—Tyler Aug. 30, 2022, no pet. h.) (mem. op.) (citing ***Vallone v. Vallone***, 644 S.W.2d 455, 459 (Tex. 1982)). As Louis correctly argues, Leola never pleaded a claim for reimbursement in the trial court. As such, Leola cannot now claim that the trial court abused its discretion by failing to consider a

claim she never pleaded, much less argue that the failure of the trial court to consider an unpleaded claim constitutes error apparent on the face of the record in a restricted appeal. *See* TEX. FAM. CODE ANN. § 3.402; *Wells*, 2022 WL 3724724, at \*3; *Vallone*, 644 S.W.2d at 459; *see also Barton v. Barton*, 584 S.W.3d 147, 156 (Tex. App.—El Paso 2018, no pet.) (wife waived claim for reimbursement by failing to request additional findings after trial). Therefore, we overrule Leola's second issue.

## DISPOSITION

Having found no error apparent on the face of the record, we overrule Leola's first and second issues, deny Leola's restricted appeal, and *affirm* the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered November 9, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

14



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 9, 2022**

**NO. 12-22-00135-CV**

**IN THE MATTER OF THE MARRIAGE OF
L.B. AND L.C.B. AND IN THE INTEREST OF J.C.B., A CHILD**

Appeal from the 307th District Court
of Gregg County, Texas (Tr.Ct.No. 2019-1324-DR)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, that all costs of this appeal be, and the same are, adjudged against Appellant, **LEOLA BRADLEY**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

15